**JUDGE CROTTY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK, STATE OF ILLINOIS, STATE OF
MARYLAND, STATE OF WASHINGTON,
                              Plaintiffs,

**07 CIV 8621**

07-CV-

- against -

:

UNITED STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

**COMPLAINT FOR**
**DECLARATORY AND**
**INJUNCTIVE RELIEF**

:

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

The States of New York, Illinois, Maryland, and Washington, through their respective

Attorneys General, allege as follows:

## I.  NATURE OF THE ACTION

1.     This case involves a congressionally authorized partnership between state and

federal governments to provide health insurance coverage to low-income children who are not

eligible for Medicaid. As enacted by Congress in 1997, the State Children's Health Insurance

Program, or SCHIP, grants states broad discretion in determining the family income level of the

children they will cover under their state SCHIP programs. Maryland's SCHIP program, approved

by the Defendant Department of Health and Human Services (HHS), covers children whose family

incomes are up to 300 percent of the federal poverty level. New York and Washington States'

current SCHIP programs, approved by HHS, cover children whose family incomes do not exceed

250 percent of the federal poverty limit. Relying on the discretion available under the authorizing

federal statute, the Legislatures of New York, Washington, and Illinois passed, and their governors

both signed, legislation authorizing expansion of their SCHIP programs. New York seeks to cover

children whose family incomes are at or below 400 percent of the federal poverty limit. Washington seeks to cover children whose family incomes are at or below 300 percent of the federal poverty limit. Illinois intends to expand its SCHIP program to cover children whose family incomes are at or below 300 percent of the federal poverty level when its allotment of federal SCHIP funds increases.

2.     On August 17, 2007, the Director of the Center for Medicaid and State Operations, within Defendant's Centers for Medicare and Medicaid Services (CMS), the branch of HHS that administers the SCHIP program for the federal government, issued a letter that purported to impose stringent new requirements on any state that covers or desires to cover under SCHIP children from families whose incomes are above an "effective level" of 250 percent of the federal poverty limit. If these requirements are allowed to stand, Maryland will be deprived of its ability to continue to administer its SCHIP program as currently constituted and as permitted by the approved state plan, applicable law, and regulations. In addition, New York, Washington, and Illinois each will be unable to fulfill its Legislature's directive to expand its state SCHIP programs. Further, depending on how CMS applies the requirements set forth in the letter to Washington's existing and approved state plan, some children already enrolled in Washington's program may lose coverage as well.

3.     In this lawsuit, the States of New York, Illinois, Maryland, and Washington seek a declaratory judgment invalidating the requirements set forth in the August 17, 2007, letter because (1) the issuance of the letter constituted illegal rulemaking not in conformance with applicable requirements of the Administrative Procedure Act and HHS's published rulemaking policy; (2) the requirements it imposed are in excess of the authority vested in the Secretary of HHS under the

-2-

applicable federal law; and (3) it imposes requirements that are not set forth in statute or codified regulations. contrary to 45 C.F.R. § 92.11. The states also seek an injunction prohibiting HHS from enforcing the requirements set forth in the CMS letter.

## II. JURISDICTION AND VENUE

4.       This action arises under Title XXI of the Social Security Act, 42 U.S.C. §§ 1397aa-jj; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the Administrative Procedure Act, 5 U.S.C. §§ 500-706. This court has jurisdiction under 28 U.S.C. § 1331 and § 1346(a)(2). Venue is proper under 28 U.S.C. § 1391(e).

## III. PARTIES

5.       Plaintiff State of New York, through its Department of Health, operates the New York State Child Health Plus program (CHPlus), which is New York's SCHIP program.

6.       Plaintiff the State of Illinois, through its Department of Healthcare and Family Services' Division of Medical Programs, operates the All Kids program, which includes Illinois' SCHIP participating child health insurance plan.

7.       Plaintiff State of Maryland, through its Department of Health and Mental Hygiene, operates the Maryland Children's Health Program, which is Maryland's SCHIP program.

8.       Plaintiff State of Washington, through its Department of Social and Health Services, operates the Washington State Children's Health Program. which is Washington's SCHIP program.

9.       Defendant HHS is an executive branch agency of the United States. Through CMS, HHS is the federal agency responsible for administering SCHIP, which is authorized by Title XXI of the Social Security Act.

-3-

## IV.    FACTUAL BACKGROUND

### A.    The State Children's Health Insurance Program

10.    SCHIP is a joint federal-state program that was first enacted in 1997 as Title XXI of the Social Security Act. Under SCHIP, states provide health coverage to uninsured children in families whose incomes are too high to be eligible for Medicaid, but still too low to afford other health insurance, and the federal government reimburses them for a substantial portion of their expenditures. Without health insurance coverage, children are less likely to obtain routine medical or dental care, establish a relationship with a primary care physician, and receive immunizations or treatment for injuries and chronic illnesses.

11.    Under SCHIP, the federal government makes matching funds available to states with approved SCHIP plans through capped allotments, based on a formula that takes into account the number of low-income children in a state. To be eligible for matching funds under SCHIP, a state must submit a state child health plan for approval by CMS. A state may amend its approved state child health plan in whole or in part at any time by submitting a state plan amendment to CMS for approval.

12.    SCHIP offers states flexibility in how they provide health insurance coverage to children. States implementing SCHIP have three choices in designing their programs: (1) a Medicaid expansion, which provides SCHIP-eligible children the same benefits and services that a state's Medicaid program provides; (2) a separate child health program distinct from Medicaid; or (3) a combination program, which has a Medicaid expansion and a separate child health program.

-4-

13.    States generally may establish income eligibility thresholds in their SCHIP programs at 200 percent of the federal poverty level or 50 percentage points above their existing Medicaid eligibility levels in 1997, the year SCHIP was enacted. 42 U.S.C. §§ 1397jj(b)(1) and (c)(4).

14.    SCHIP gives states broad discretion in determining how a family's income is counted. Under 42 U.S.C. § 1397bb(b), states may establish eligibility rules including those relating to income and resources. SCHIP contains no provision that defines income and does not limit states' authority to decide how to calculate income or to disregard income in making the calculation.

15.    The latitude granted to each state by SCHIP, 42 U.S.C. § 1397bb(b)(1), and its implementing regulations, 42 C.F.R. § 457.320, to apply income disregards to establish effective income eligibility levels allows each state to consider differences in the cost of living, differences in the cost of health care, geographic differences in costs and expenditures and other factors that can affect a family's ability to afford health insurance for its children. The leeway that Congress granted to states to set their own income rules was intended to allow states utmost flexibility to consider such factors, with the goal of maximizing health insurance coverage for children.

16.    HHS Secretary Michael O. Leavitt has acknowledged the wide latitude granted by SCHIP under which each state may set its own income rules for SCHIP eligibility. Secretary Leavitt stated in a July 31, 2007, letter to Senator Chuck Grassley, the former chair and now ranking member of the Senate's Committee on Finance, that SCHIP "gives states great flexibility to define income. Through income disregards, states effectively raise the income eligibility threshold. Under current regulations, we have no authority to disapprove amendments solely based

on income disregards." A copy of this letter is attached as Exhibit A.

17.    Currently, 12 states (including Maryland) plus the District of Columbia have SCHIP programs with income eligibility thresholds above 250 percent of the federal poverty level. These states have plans that are in accordance with the flexible income provisions afforded states under SCHIP and the regulations properly promulgated thereunder, and operate their SCHIP programs pursuant to state child health plans that have been duly approved by CMS. Other states, including New York, Washington, and Illinois, have adopted by action of their legislatures, but not yet implemented, new income eligibility levels for their existing SCHIP programs that would allow them to extend coverage to children whose family incomes are above 250 percent of the federal poverty level. Other states are actively considering such expansions.

18.    Under SCHIP, state child health plans are required to describe "procedures to be used to ensure [ ] that only targeted low-income children are furnished child health assistance under the State child health plan[.]" 42 U.S.C. § 1397bb(b)(3)(A). Neither the SCHIP statute nor implementing regulations duly promulgated by HHS require specific levels of participation for children in specific income groups, and CMS in the past has not disapproved any state child health plan or plan amendment for failing to assure a specific level of participation at any income level.

19.    Under SCHIP, state child health plans are required to describe procedures intended to minimize the possibility that SCHIP insurance coverage substitutes for, or "crowds out," private health insurance coverage available under group health plans, especially that offered by employers. 42 U.S.C. § 1397bb(b)(3)(C). Neither the SCHIP statute nor implementing regulations duly promulgated by HHS require specific crowd-out strategies, and CMS in the past has not disapproved any state child health plan or plan amendment for failing to include any specific

-6-

crowd-out strategy.

## B.    New York's SCHIP Program — CHPlus

20.    New York's CHPlus program was started in 1991 before enactment of the federal program, and became a federally approved SCHIP plan in 1998. As of August 2007, nearly 400,000 children were enrolled in CHPlus. As the second largest SCHIP program in the nation, New York reduced the number of uninsured children in the state by 40 percent from 1997 to 2005. Since July 1, 2000, the New York plan has provided coverage to children whose family's income is up to 250 percent of the federal poverty level.

21.    In 2007, the Governor of New York, Eliot Spitzer, proposed and the Legislature enacted an expansion of New York's CHPlus program, Chapter 58 of the Laws of 2007, contingent upon the availability of federal financial participation, to uninsured children whose family's gross income is at or below 400 percent of the federal poverty level.

22.    In April 2007, in accordance with the newly enacted state law, New York's Department of Health submitted a state plan amendment to CMS, which included a provision to expand coverage for children with family income up to 400 percent of the federal poverty level by using income disregards. CMS had 90 days to review New York's state plan amendment to determine if it substantially complied with the requirements of Title XXI. 42 U.S.C. § 1397ff(c). New York's state plan amendment fully complied with all existing statutory and regulatory requirements, and provided that its expanded CHPlus program would take effect on September 1, 2007.

23.    Under its plan to expand coverage, New York expects to enroll 72,000 previously uninsured children in families with incomes above 250 percent of the federal poverty level.

-7-

Experience in other states demonstrates that similar expansions have also had the desirable effect of increasing enrollment among children *already* eligible for but not now enrolled in SCHIP. and this is also a substantial goal of the CHPlus program.

24.    New York's expanded CHPlus program will employ two methods to minimize diversion from private coverage: (1) As families move up the income scale, they will contribute a higher monthly co-premium toward the cost of their coverage. This ranges from $9 to $60 per month per child, up to a family cap; (2) New York will impose a six-month period of uninsurance for those above 250 percent of the federal poverty level who drop employer-based health insurance coverage to obtain CHPlus coverage, with certain exceptions. Such waiting periods can be disincentives to discontinuing private coverage and New York's six month period is longer than the waiting periods in most other states that have expanded their SCHIP income eligibility levels above 250 percent with CMS's approval.

## C.    Maryland's SCHIP Plan

25.    Maryland's SCHIP plan ("MCHP") was created following the enactment of Maryland Laws of 1998, ch. 110, which authorized the Maryland Department of Health and Mental Hygiene to create the program consistent with Title XXI of the Social Security Act. In 2000, the Maryland General Assembly enacted an expansion of MCHP. which, effective July 1. 2001, created the MCHP Premium program. In exchange for a modest premium payment. this program provides access to health insurance for children with family income above 200 percent of the federal poverty level and below 300 percent of the federal poverty level. Maryland Laws of 2000, ch. 16. Effective June 1, 2007, CMS approved Maryland plan amendments that reauthorize the MCHP Premium Program as a Medicaid expansion program. The Maryland General Assembly

-8-

last amended the MCHP authorizing legislation in 2003. Maryland Laws of 2003, ch. 203, § 1, codified at Maryland Code Ann. Health-General Article § 15-301 et seq.

26.     Under current law, MCHP offers health care coverage to children up to 19 years of age who live in households with income up to 300 percent of the federal poverty level, as determined in accordance with Maryland's approved SCHIP plan. MCHP enrollees access services through HealthChoice, Maryland's Medicaid managed care program, and have the same benefit package as children enrolled in Medicaid. For those enrolled in the Premium portion of MCHP, premium payments are $45 per month for eligible individuals whose family income is above 200 percent but at or below 250 percent of the federal poverty level. Premium payments for eligible persons whose family income is above 250 percent but at or below 300 percent of the federal poverty level is $57 per month.

27.     As of July 2007, 103,072 persons were enrolled in MCHP. Maryland estimates that approximately 3,700 children whose family income exceeds 250 percent of the federal poverty level are enrolled in MCHP.

**D.     Washington's SCHIP Plan**

28.     Washington's SCHIP program was created following the enactment of Wash. Laws of 1999, Ch. 370, which authorized the Washington Department of Social and Health Services (DSHS) to create the program consistent with Title XXI of the Social Security Act. The program began on February 1, 2000, after receiving federal approval of Washington's state child health plan. As of June 2007, approximately 10,400 children up to age 19 were enrolled in SCHIP. Washington's plan has provided coverage to children up to age 19 whose family's income is between 200 to 250 percent of the federal poverty level. Between 2000 and 2006, Washington

-9-

reduced the number of uninsured children in the state by 25 percent through implementation of its SCHIP program.

29.     In 2007, the Washington Legislature enacted Wash. Laws of 2007, Ch. 5, which authorized expansion of Washington's SCHIP to include children from families whose incomes do not exceed 300 percent of the federal poverty level, effective January 1, 2009. DSHS has begun planning and outreach efforts necessary to comply with this legislative directive. Implementing the law will also require approval of a state plan amendment by CMS and notification of Washington's eligibility regulations through the state rulemaking process.

30.     Under the legislation to expand coverage, Washington expects to enroll approximately 3,000 low-income children in families with incomes above 250 percent of the federal poverty level by July 2009 and approximately 8,000 children by June of 2010. Experience in other states demonstrates that similar expansions have also had the desirable effect of increasing enrollment among children *already* eligible for but not now enrolled in either Medicaid or SCHIP, and this is also a substantial goal of Washington's expanded SCHIP program.

31.     Washington's expanded SCHIP program will employ several strategies to minimize substitution of SCHIP coverage for available private coverage: (1) families will be required to disclose existing employer-based health insurance coverage on SCHIP application under penalty of perjury, and children with such existing coverage will not be eligible for SCHIP coverage; (2) families will be required to enroll their children in available employer-sponsored health care when it is cost effective for the state to contribute to the cost of such care rather than enrolling the children in the SCHIP program; (3) employer-sponsored plans will be required to enroll such children regardless of otherwise applicable enrollment limitations; (4) children from families

-10-

whose incomes are greater than 250 percent of the federal poverty level and who drop employer-based health insurance coverage to obtain SCHIP coverage, will have a four-month waiting period before they can be enrolled in SCHIP, with limited exceptions; and (5) families will pay a monthly premium toward the cost of their coverage based on a sliding scale.

32.    In order to implement the expanded program authorized by Washington's Legislature by January 1, 2009, DSHS will have to submit a state plan amendment for CMS's approval.

**E.    Illinois's SCHIP Plan**

33.    Illinois operates All Kids as a single, comprehensive health insurance program for children of any income level. All Kids encompasses 11 different plans that vary by family income level. Illinois receives federal matching funds under both Medicaid and SCHIP for various All Kids plans.

34.    Illinois' Public Aid Code, 205 ILCS 5/5, provided the statutory basis for the state's first SCHIP financed expansion of coverage for children beyond mandatory Medicaid levels. The Illinois Children's Health Insurance Program Act, 215 ILCS 106, authorizes the state's expansion of coverage for children up to 200 percent of the federal poverty level.

35.    Under its approved SCHIP plan, Illinois claims federal matching funds for All Kids services to unborn children whose mothers have income at or below 200 percent of the federal poverty level who are not eligible for Medicaid, children aged 6 through 18 years of age in families with income above 100 percent up to and including 200 percent of the federal poverty level, and children aged birth through 5 years of age in families with income above 133 percent up to and including 200 percent of the federal poverty level.

36.     Effective July 1, 2006, under Illinois' Covering ALL KIDS Health Insurance

Program Act, 215 ILCS 170, Illinois extended All Kids to all uninsured children regardless of

family income.

37.     To date, Illinois has not sought to amend its SCHIP plan to claim federal matching

funds for children with income above 200 percent of the federal poverty level because the state has

fully exhausted its available SCHIP allotment on the program in place prior to July 1, 2006.

Should Illinois' allotment of federal SCHIP funds increase, the state would seek to claim SCHIP

funds for children in families with income above 200 percent of the federal poverty level.

## F.    CMS's August 17, 2007, Letter Imposes New SCHIP Mandates

38.     On August 17, 2007, CMS issued a letter to state health officials announcing that it

would immediately begin to apply a brand-new "review strategy" to scrutinize requests by states to

expand eligibility under their SCHIP programs to children in families with effective family income

levels above 250 per cent of the federal poverty level. The CMS letter stated that not only would it

apply its "review strategy" to new state plan amendments, but that all "affected States" should

amend their existing SCHIP child health plans to make them comply with CMS's new strategy or

face "corrective action." CMS's new "review strategy" effects substantive changes in the operation

of the SCHIP program, but was not preceded by and is not supported by any change in the SCHIP

statute or implementing regulations. A copy of CMS's August 17, 2007, letter is attached as

Exhibit B.

39.     Before announcing this new "review strategy" CMS did not publish a general

notice of proposed rule making in the Federal Register, nor did it give any states with SCHIP

programs or other interested persons an opportunity to submit comments in any form. CMS's new

-12-

"review strategy" imposes binding new preconditions and requirements on all of the states that operate SCHIP programs. It is not an interpretative rule. a general statement of policy, or a rule of agency organization, procedure, or practice. 5 U.S.C. § 553(b)(A). In publishing its new "review strategy" CMS did not assert that it had good cause to find that notice and comment was impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(B).

40.     Many states, including Maryland, already operate SCHIP programs under CMS-approved state child health plans that cover children in families whose income is above 250 percent of the federal poverty level. According to CMS's August 17, 2007, letter, they must amend their state plans to comply with the new rules within 12 months or CMS will pursue "corrective action." Other states such as New York and Washington have enacted legislation to expand their SCHIP programs to cover such children, expecting that CMS would continue to review implementing state plan amendments in accordance with existing statutes, regulations, and policies. This new "review strategy" changes CMS's approach to such expansions, and effectively overrides both existing and anticipated state plans and state legislation. Significant numbers of children throughout the nation are at risk of being denied heath insurance coverage under SCHIP as a result of CMS's new "review strategy."

41.     In its August 17, 2007. letter to state health officials. CMS decreed that any state that now covers or plans to cover children in families whose income is above 250 percent of the federal poverty level must as a precondition provide CMS with two mandatory "assurances."

*New Rule on Enrollment of Low-Income Children*

42.     The first CMS-mandated "assurance" is that the state would have to assure CMS that it has already enrolled at least 95 percent of the children in the state below 200 percent of the

federal poverty level who are eligible for either SCHIP or Medicaid.

43.     The SCHIP statute neither requires nor authorizes HHS to demand that a state

provide such an "assurance" as a precondition to providing coverage under its SCHIP program to

children whose family income is above 250 percent of the federal poverty level. HHS has never

promulgated regulations to require that states provide such an assurance as a condition to

approving a state child health plan or an amendment. Such a mandatory precondition conflicts

with the authority and flexibility granted to the states to decide the income eligibility level they

will apply in their state SCHIP programs. This requirement also conflicts with an existing HHS

rule that provides that "[a] State need meet only Federal administrative or programmatic

requirements for a plan that are in statutes or codified regulations." 45 C.F.R. § 92.11(b).

44.     No state has met this new 95 percent enrollment rule. The national average

participation rate in SCHIP among children whose family income is below 200 percent of the

federal poverty level is 74 percent. The state with the highest participation rate, Vermont, enrolls

only 92 percent of children whose family income is below 200 percent of the federal poverty level.

New York's participation rate is approximately 88 percent. Washington's participation rate for

2007 is approximately 91 percent. Maryland's participation rate is approximately 77 percent. The

practical consequence of the new 95 percent rate mandated by CMS is to bar states from providing

affordable health insurance coverage to children with family incomes above 250 percent of the

federal poverty level.

45.     No statute or regulation requires that states provide such an assurance regarding

participation rates. Further, such an assurance about past events that are beyond states' ability to

control, does not constitute a reasonable procedure to prevent substituting SCHIP coverage for

-14-

existing private insurance.

*New Private Insurance Decline Standard*

46. The second CMS-mandated "assurance" is that the states must assure CMS that the number of children in the "target population" and who are currently insured through private employers has not decreased by more than two percentage points over the past five years. No statute or regulation requires that states provide such an assurance as a condition to approving a state child health plan or an amendment. Further, such an assurance about past events that are beyond states' ability to control, does not constitute a reasonable procedure to prevent substituting SCHIP coverage for existing private insurance.

*New Crowd-Out Rules*

47. In addition to imposing these two mandatory preconditions, CMS announced that it will now require states that cover or plan to cover children in families whose income is above 250 percent of the federal poverty level to adopt two new crowd-out strategies, neither of which is required by existing SCHIP law or regulations. According to CMS, only states that adopt both of these new crowd-out strategies will now be deemed to satisfy the regulatory requirement that a state's child health plan describe "reasonable procedures to ensure that" its SCHIP coverage does not "substitute for coverage provided under" other group health plans. 42 C.F.R. § 457.805.

*New Mandatory 12-Month Waiting Periods*

48. The first mandatory condition imposed by CMS's new "review strategy" is that each state must impose a 12-month waiting period before an eligible uninsured child who previously had private health insurance could enroll in the SCHIP program. No exceptions to the new 12-month waiting period will be permitted, even for children who lose private coverage

-15-

because of events beyond their or the states' ability to control.

49.    Existing SCHIP regulations require a waiting period only in one instance: for
SCHIP programs that include a separate child health program under which the state pays part or all
of the premiums for a SCHIP enrollee's group health insurance plan. 42 C.F.R. § 457.810. New
York's SCHIP program does not include such premium assistance, nor does Washington's current
SCHIP program, though the legislation authorizing the expansion of their SCHIP programs
contemplates that such assistance may be a strategy to be used when it is cost-effective and
consistent with Title XXI of the Social Security Act for the state to do so.

50.    Although not mandated by current statute or regulation, many states have included
a waiting period as a strategy to deter crowd out, but it has not been mandated in statute or
regulation. Currently, only 2 states have a 12-month waiting period. All other state-imposed
waiting periods are six months or less and those states have had their state child health plans
approved by CMS. New York's latest submission includes a six-month waiting period, with
certain exceptions. Maryland's current SCHIP program has a 6-month waiting period.
Washington's current SCHIP program has a 4-month waiting period, with certain exceptions, and
its expanded SCHIP program will include a similar 4-month waiting period. The imposition of this
new mandatory 12-month waiting period is a change of policy by CMS, is not authorized by any
statute or regulation. and does not constitute a reasonable procedure designed to prevent
substituting SCHIP health insurance coverage for existing private insurance.

51.    Further, all states with waiting periods allow some exceptions. Some states, for
example. elect not to impose a waiting period when the cost of the prior employer-based plan was
unaffordable or when the private coverage the family once had is no longer available for reasons

beyond its control such as a working parent's death.

*New Mandated Cost-Sharing Policies*

52. In addition, CMS's new "review strategy" imposes a requirement that each state must impose new cost-sharing rules on families with modest incomes whose children are covered by SCHIP. To comply with the requirement set forth in the August 17 letter, states would have to impose costs at 5 percent of family income unless they could show the costs were no less than one percentage point below the total cost sharing charges of "competing" private plans (including premiums, deductibles, copayments, and coinsurance amounts). No statute or regulation imposes such a requirement, nor is such a requirement a reasonable procedure designed to prevent substituting SCHIP health insurance coverage for existing private insurance.

53. Because states will have considerable difficulty obtaining information about the costs of "competing" plans or calculating "total costs" for plans that typically rely on deductibles and copayments, the practical result of the new cost-sharing requirement will be to push states to charge the full 5 percent of income in their SCHIP programs. Nearly all currently CMS-approved SCHIP plans have cost-sharing levels below 5 percent of family income, most averaging around 2 percent of family income. No statute or regulation imposes such a requirement, nor is such a requirement a reasonable procedure designed to prevent substituting SCHIP health insurance coverage for existing private insurance.

54. CMS's new "review strategy" eliminates states' flexibility, under existing federal statute and regulations, to determine the appropriate level of costs they will impose on families and conflicts with state efforts to set charges at levels that would keep SCHIP coverage affordable. Federal law, 42 U.S.C. § 1397cc(e)(3)(B), specifically permits, for children whose family income

-17-

is above 150 percent of the federal poverty level, cost-sharing on a sliding scale related to income, with a maximum yearly cost-sharing limitation of 5 percent of the family income. Under CMS's new "review strategy," to impose less than 5 percent cost-sharing for families with incomes above 250 percent of the federal poverty level, states must meet certain standards not imposed by Congress, standards that improperly restrict their authority to choose cost-sharing limits, and standards that CMS has imposed by the issuance of a letter without notice and without any opportunity to comment.

## G.  CMS Disapproves New York's State Plan Amendment

55.     Three weeks after mandating its new "review strategy," CMS applied it to disapprove New York's state plan amendment. In a letter dated September 7, 2007, the CMS Administrator wrote that New York had failed to provide assurances that it has enrolled at least 95 percent of the children with family incomes below 200 percent of the federal poverty level, as required by CMS's August 17, 2007, letter.

56.     According to CMS, New York's State plan amendment also failed to include a 12-month "period of uninsurance" for populations over 250 percent of the federal poverty level. New York's state plan amendment also did not satisfy CMS's newly imposed cost-sharing rules. New York neither set its cost-sharing at the 5 percent family cap nor showed that its cost-sharing provisions compared to cost-sharing required by "competing private plans not be more favorable to the public plan by more than 1 percent of the family income." CMS said that its disapproval of New York's State plan amendment was "consistent" with its August 17, 2007, letter.

## H.  CMS's New "Review Strategy" Harms Maryland

57.     CMS's "review strategy" will deprive Maryland of its ability to continue to

-18-

administer its SCHIP program as currently constituted and as permitted by applicable law and regulations. The result is that thousands of children will be prevented from enrolling in the program as they are permitted to do under current law. In addition, CMS's new policy would require that group of Maryland children who now have to wait six months to qualify for MCHP to endure an additional six months without coverage. Finally, the lack of clarity in the new CMS policy creates a risk that CMS may at some future time disallow federal matching funds for Maryland despite Maryland's good faith efforts to comply with that policy.

## I.    CMS's New "Review Strategy" Harms Washington

58.    CMS's new "review strategy" harms Washington in two ways. First, the lack of clarity about how the new "review strategy" will affect Washington's current approved SCHIP state plan creates a risk that at some future time CMS will disallow federal match for state expenditures made in good faith consistent with that plan. Further, CMS' mandated "review" of existing state plans puts some children currently enrolled in Washington's SCHIP program at risk of being disenrolled from the program.

59.    Second, the "review strategy" makes it clear that Washington will not be able to carry out the direction of its Legislature to expand the Washington SCHIP plan. The result is that several thousand low-income children will not be able to enroll in the program and, for the most part, will remain uninsured. According to a 1997 report prepared by FamiliesUSA, children without health insurance coverage are less likely to receive medical treatment for well child visits, diagnostic screening and immunization services to ensure proper development; are less likely to see doctors for medical conditions that may cause long term problems; are less likely to receive treatment for injuries; fare worse and are more likely to die when hospitalized for medical

-19-

conditions; and are less likely to have continuity in medical providers in critical development years.

60.     Under CMS' new "review strategy," to impose less than 5 percent cost-sharing for families with incomes above 250 percent of the federal poverty level, Washington must meet certain standards not imposed by Congress, standards that improperly restrict the state's authority to choose cost-sharing limits, and standards that CMS has imposed by the issuance of a letter without notice and without any opportunity to comment.

61.     Under CMS' new "review strategy," Washington will be required, as a condition of approval of its state plan, to make assurances regarding the level of participation in its Medicaid and SCHIP program that no state can make today. Further, Washington would have to make an assurance about the level of decline in participation in private health insurance, when the information necessary to make such an assurance may not be available and the level of such participation is likely the result of factors which the state cannot control or even influence.

## J.     CMS's New "Review Strategy" Harms Illinois

62.     To date, Illinois has not sought to amend its SCHIP plan to claim federal matching funds for children with income above 200 percent of the federal poverty level because the state has fully exhausted its available SCHIP allotment on the program in place prior to July 1, 2006. Children are currently funded with state (unmatched) funds in the All Kids expansion group between 200 and 300 percent of the federal poverty level. Illinois expects that the Congress will reauthorize the SCHIP program, that its allotment of federal SCHIP funds will substantially increase, and that it would then seek to claim SCHIP matching funds for children in families with income above 200 percent of the federal poverty level.

63.     But Illinois will not be able to take advantage of this expected increase in its

SCHIP allotment under the restrictions imposed by CMS's new "review strategy." While Illinois

requires that children in families with income above 200 percent of the federal poverty level must

not have had insurance for 12 months to qualify for All Kids, the state has established a number of

good cause exceptions to this requirement. Furthermore, although the state engaged in an

aggressive outreach campaign to inform all families of their children's potential eligibility and that

campaign resulted in large increases in enrollment of the poorest children, Illinois does not have

the means to prove that 95 percent of eligible children in families with income below 200 percent

of the federal poverty level are enrolled. Finally, Illinois does not have the means to show that the

number of children insured through private employers has not decreased by more than two

percentage points over the prior five-year period.

## V.   RELIEF REQUESTED

### A.     Declaratory Judgment

Plaintiffs ask this Court to issue a declaratory judgment, as follows:

1.     That the new "review strategy" mandated by CMS in its August 17, 2007, directive

to state health officials was rulemaking by HHS subject to the public notice and comment

requirements of the Administrative Procedure Act. 5 U.S.C. § 553 and HHS's rulemaking policy.

2.     That CMS in mandating the new "review strategy" failed to comply with the public

notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b) and

HHS's rulemaking policy.

3.     That CMS acted in excess of HHS's statutory authority under the Social Security

Act by mandating the new "review strategy" because the requirements it imposed are contrary to

-21-

and not reasonably related to the purposes of Title XXI of the Social Security Act and thus are in violation of Title XXI of the Social Security Act and the Administrative Procedure Act. 5 U.S.C. § 706(2)(C), and HHS's rulemaking policy.

4.  That the requirements imposed by CMS's new "review strategy" are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and thus are in violation of Title XXI of the Social Security Act and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and HHS's rulemaking policy.

5.  That the requirements imposed by CMS's new "review strategy" outlined in its August 17, 2007, letter impose administrative and programmatic requirements that are not set forth in statute or codified regulations and therefore under 45 C.F.R. § 92.11 plaintiffs are not required to comply with them.

6.  That HHS lacks authority to disapprove state child health plans or plan amendments based on the criteria stated in CMS's August 17, 2007, letter.

## B.    Injunctive Relief

Plaintiffs ask this Court to enjoin HHS from disapproving any state child health plan or state plan amendment using the criteria stated in CMS's August 17, 2007, letter; from giving effect to any disapproval of a state plan or plan amendment based on the criteria stated in CMS's August 17, 2007, letter; and requiring HHS to review such plans and amendments based solely on proper application of Title XXI and validly promulgated regulations.

DATED: October 3, 2007.

FOR PLAINTIFF STATE OF NEW YORK
ANDREW M. CUOMO
Attorney General

By:    Peter Sistrom
Assistant Attorney General
Office of the Attorney General
120 Broadway, 24th Floor
New York, New York 10007
(212) 416-8568

-23-

FOR PLAINTIFF STATE OF ILLINOIS
LISA MADIGAN
Attorney General

By:    Karen Konieczny
Assistant Attorney General
Office of Illinois Attorney General
160 North LaSalle Street, Suite N-1000
Chicago, IL 60601
(312) 793-2380

-24-

FOR PLAINTIFF STATE OF MARYLAND
DOUGLAS F. GANSLER
Attorney General

By:    Joel Tornari
Assistant Attorney General
Office of Attorney General
Maryland Department of Health and Mental Hygiene
300 West Preston Street, Room 302
Baltimore, Maryland 21201
(410) 767-1859

FOR PLAINTIFF STATE OF WASHINGTON
ROBERT M. MCKENNA
Attorney General

By:      William L. Williams
Senior Assistant Attorney General

By:      Catherine R. Hoover
Assistant Attorney General

Office of the Attorney General
7141 Cleanwater Dr. SW
PO Box 40124
Olympia, Washington 98504-0124
(360) 586-6565

-26-

# EXHIBIT





THE SECRETARY OF HEALTH AND HUMAN SERVICES
WASHINGTON, D.C. 20201

JUL 3 1 2007

The Honorable Charles Grassley
Committee on Finance
U.S. Senate
Washington, DC 20510

Dear Senator Grassley:

Thank you for your letters to the President and myself
urging that no further waivers for adult coverage under the
State Children's Health Insurance Program (SCHIP) be
granted or renewed. I appreciate knowing of your concerns;
the Administration completely agrees with how important it
is to clearly "return SCHIP to the original focus of
covering low income children." I want to assure you that
we are taking appropriate steps to meet this objective.

With regard to states that have waivers coming up for
renewal, we are currently working with them to move their
adult populations into Medicaid. In FY 2006, approximately
700,000 adults were served in SCHIP waivers, of which
500,000 were parents of Medicaid or SCHIP children and
200,000 were childless adults. As waivers have come up for
renewal this year, we have moved adult populations out of
SCHIP and into Medicaid. We anticipate that, by October 1
of this year, 296,000 of these parents and 86,500 childless
adults - or 55 percent of all adults ever enrolled in SCHIP
in 2006 - will be moved out of SCHIP. Moving adults out of
SCHIP and into regular Medicaid will significantly lower
the funds projected for SCHIP in FY 2008.

I am concerned that the reauthorization legislation
reported by the Senate Finance Committee will reverse the
progress we have made with states. The bill would allow
states to keep their adults in SCHIP for a longer period of
time than would be allowable under the Administration's
approach. Under the Senate bill, there may still be
approximately 600,000 adults in SCHIP in 2012 according to
the Congressional Budget Office (CBO).

Page 2 - The Honorable Charles Grassley

This is not, of course, a new issue to Congress as the model waiver was introduced in August 2001, a time when states had substantial reserves in their allotments.  Under the terms and conditions of these waivers, serving an adult could never result in a child being denied coverage. States also agreed to take appropriate actions if they were to exhaust their SCHIP allotments, a situation states have now faced in recent years as SCHIP has matured and enrollment of children increased.

States such as Illinois, New Jersey, and Wisconsin have provided data to support the original rationale for these waivers -- that family coverage would increase enrollment of children and that more flexibility in public programs would allow for more effective coverage of low-income individuals.  States led by Democratic and Republican governors alike wanted alternatives to traditional Medicaid.  These waivers proved to provide valuable lessons to support Medicaid reforms such as benefit flexibility and appropriate cost sharing that Congress adopted under your leadership, Senator Grassley, in the Deficit Reduction Act of 2005 (DRA).

Because of the important reforms in the DRA, Medicaid is now a more viable option for states to use to serve parents who are low-income but in the workforce and we are directing states to that option rather than to SCHIP.  We do not intend to approve any new waivers that cover adults under SCHIP or renew any waivers for adults.

Under your leadership, Congress has previously taken action on the issue of adults in SCHIP in the DRA and in the National Institutes of Health Reform Act of 2006.  The Senate bill is a step back from that progress. As you acknowledge, Congress also continued to fund shortfalls in states that were attributed in part to adult coverage.

Another issue that has developed in the current debate is that states have been allowed to increase eligibility beyond the definition of a targeted low-income child. These expansions have been made through State Plan Amendments, not waivers. These expansions have been accomplished because the law gives states great flexibility to define income.  Through income disregards, states effectively raise the income eligibility threshold.  Under current regulations, we have no authority to disapprove amendments solely based on income disregards. We support closing this loophole.

Page 3 - The Honorable Charles Grassley

I look forward to working with you on the important task of reauthorizing SCHIP as it was originally intended.  This should receive broad bipartisan support as it did when SCHIP was created 10 years ago.  It is urgent that Congress complete its work and send the President a bill he can sign before the program expires September 30, 2007.  In fact, the President would sign reasonable legislation to reauthorize SCHIP today.  The President's Budget included a proposed $5 billion expansion of the program over five years, which translates into a 20 percent increase in funding above the baseline.

The Office of Management and Budget advises that there is no objection to the transmission of this letter as regards the program of the President.

Thank you for your leadership on this important issue.

Sincerely,

Michael O. Leavitt

# EXHIBIT
# B

SEP-07-2007  07:33                                                    P.02



DEPARTMENT OF HEALTH & HUMAN SERVICES                Centers for Medicare & Medicaid Services

                                                     _Administrator_
                                                     Washington, DC 20201

                         SEP - 7 2007


Ms. Judith Arnold, Director
Division of Coverage and Enrollment
Office of Health Insurance Programs
State of New York Department of Health
Corning Tower
Empire State Plaza
Albany, NY 12237-0004

Dear Ms. Arnold:

I am responding to your request for approval of a title XXI State plan amendment (SPA) dated
April 12, 2007, with additional information submitted on May 9, 2007, and August 27, 2007.
This SPA seeks to increase the financial eligibility standard for its separate State Children's
Health Insurance Program (SCHIP) from the current effective family income eligibility level at
or below 250 percent of the Federal poverty level (FPL) to an effective family income eligibility
level at or below 400 percent of the FPL. The SPA also proposes to implement a 6-month
waiting period of prior uninsurance for children with family incomes above 250 percent of the
FPL, with certain listed exceptions. After extensive review of this SPA by the Department of
Health and Human Services, I regret to inform you that we are not approving this SPA.

Section 2101(a) of the Social Security Act (the Act) specifies that the purpose of title XXI is to
"expand the provision of child health assistance to uninsured, low-income children in an
effective and efficient manner that is coordinated with other sources of health benefits coverage
for children." New York has not demonstrated that its program operates in an effective and
efficient manner with respect to the core population of targeted low-income children.
Specifically, it has failed to provide assurances that the State has enrolled at least 95 percent of
the children in the core targeted low-income child population, those with family incomes below
200 percent of the FPL. As outlined in an August 17, 2007, letter to State Health Officials, such
assurances are necessary to ensure that expansion to higher income populations does not
interfere with the effective and efficient provision of child health assistance. In the absence of
such an assurance, I cannot conclude that New York is effectively and efficiently using available
resources to serve that core population, such that expansion to higher income levels would not
divert resources from serving the core population.

Section 2102(b)(3)(C) of the Act requires that State plans include procedures to ensure that
SCHIP insurance does not substitute for coverage under group health plans. Applicable
regulations at 42 CFR section 457.805 implement this requirement by mandating that the State
plan include a description of "reasonable procedures to ensure that health benefits coverage
provided under the State plan does not substitute for coverage provided under group health

Page 2 – Ms. Judith Arnold

pians." In issuing this regulation, the Centers for Medicare & Medicaid Services (CMS)
acknowledged that, at higher family income eligibility levels, there is a greater likelihood of
substitution of coverage. At the high proposed family income eligibility levels, reasonable
procedures should include a full range of procedures to discourage substitution. New York's
proposal does not include procedures to prevent such substitution that include a 1-year period of
uninsurance for populations over 250 percent of the FPL. Additionally, New York's proposed
cost sharing has not met the requirement that cost sharing under the State plan compared to cost
sharing required by competing private plans not be more favorable to the public plan by more
than 1 percent of the family income, nor has the State proposed to set its cost sharing at the
5 percent family cap. Absent such procedures, I cannot find that New York meets the
requirement for reasonable procedures to prevent substitution of coverage.

For these reasons, and after consulting with the Secretary as required under 42 CFR section
457.150(c), I am unable to approve this SPA for expanding coverage. This disapproval is
consistent with the August 17, 2007, letter to State Health Officials discussing how these existing
statutory and regulatory requirements should be applied to all States expanding SCHIP effective
eligibility levels above 250 percent of the FPL.

If you are dissatisfied with this determination, you may petition for reconsideration within 60
days of the receipt of this letter, in accordance with the procedure set forth at Federal regulations
at 42 CFR section 457.203. Your request for reconsideration may be sent to Ms. Cynthia Potter,
CMS, Center for Medicaid and State Operations, 7500 Security Boulevard, Mail Stop S2-25-22,
Baltimore, Maryland 21244-1850.

If you have any questions or wish to discuss this determination further, please contact Ms. Sue
Kelly, Associate Regional Administrator, Centers for Medicare & Medicaid Services, Division
of Medicaid and Children's Health, 26 Federal Plaza, Room 3811, New York, NY 10278-0063.

Sincerely,

Kerry Weems
Acting Administrator

Page 3 – Ms. Judith Arnold

cc: CMS Region II, New York