UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
STATE OF NEW YORK, STATE OF ILLINOIS,
STATE OF MARYLAND, STATE OF WASHINGTON,                     :

                              Plaintiffs,      :    07-CV-8621 (PAC)

              - against -                      :    DECLARATION OF
                                                    KEVIN CORNELL
UNITED STATES DEPARTMENT OF HEALTH AND          :
HUMAN SERVICES,                                     ECF CASE

                              Defendant.
------------------------------------------------------------x

KEVIN CORNELL hereby declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.   I am competent to testify in the matters set forth below, which are based on my personal knowledge.

2.   I am employed as the Regional Medicaid Eligibility Representative of the Health and Recovery Services Administration (HRSA) of Washington State's Department of Social and Health Services (DSHS). I began work for DSHS on March 1, 1990, as a Financial Service Specialist. I remained employed within the Financial Service Specialist series until September 16, 2006, when I came to work for HRSA as a Regional Medicaid Eligibility Representative. I have been employed as a Regional Representative continuously since that time.

3.   As Regional Medicaid Eligibility Representative, I am fully familiar with the eligibility requirements for the State's Medicaid, State Children's Health Insurance Program (SCHIP), and other state-funded medical programs. I respond to questions from DSHS field staff and constituents regarding eligibility for such programs. I am responsible for Region 3,

comprised of Snohomish, Skagit, Whatcom, Island, and San Juan counties. In addition, I am the lead program manager in the policy unit for several of the State's medical programs, including SCHIP. I work extensively on drafting program regulations (codified in the Washington Administrative Code) and clarifying information for the SCHIP program. I publish a monthly report for the SCHIP program, as well as the Annual SCHIP report. I serve as a policy representative on a number of committees addressing aspects of Washington's publicly-funded medical programs.

4.  I am a member of the planning team for Washington's SCHIP expansion, authorized by the Legislature in 2007, to provide coverage for children with family incomes between 250% and 300% of the federal poverty level. I am also responsible for drafting the regulations for the SCHIP expansion. On February 26, 2008, I participated with other staff members of HRSA in a conference call with representatives of CMS. This conference call was scheduled at CMS's request. Present for CMS were Kathleen Farrell (CMS's Director for State Children's Health Insurance Program), Jeff Silverman (CMS Region 10 project officer), and Janice Adams (CMS Region 10 local field representative). The purpose of the meeting was to discuss how Washington would come into compliance with requirements imposed by CMS in a letter dated August 17, 2007, from CMS Director Dennis G. Smith to State Health Officials (the "August 17 Letter"). In the August 17 Letter, CMS announced requirements that must be met before CMS will approve expansion of a state's SCHIP program to cover children with household income above 250% of the federal poverty level.

5.  During the teleconference, the representatives from CMS made clear that the requirements in the August 17 Letter must be met before a state can expand its SCHIP program to cover children with household income above 250%, but they did indicate a willingness to

work with Washington on meeting the requirements. For example, the CMS representatives demonstrated a willingness to be flexible about the source of data Washington could rely upon to establish the August 17 Letter requirements.

6.      After the teleconference, I received a follow-up e-mail from Kathleen Farrell concerning "establishing compliance with the August 17th SHO letter". A true and correct copy of the e-mail is attached as **Exhibit A**.

Dated:  Olympia, Washington
        April 14, 2008

_____
KEVIN CORNELL

# EXHIBIT A

## Cornell, Kevin E. (DSHS/HRSA)

| | |
|---|---|
| **From:** | Farrell, Kathleen M. (CMS/CMSO) [Kathleen.Farrell@cms.hhs.gov] |
| **Sent:** | Friday, February 29, 2008 10:33 AM |
| **To:** | Cornell, Kevin E. (DSHS/HRSA) |
| **Cc:** | Strauss, Richard (CMS/CMSO); Richards, Barbara K. (CMS/CMCHO); Adams, Janice M. (CMS/WC); Pagan, Arthur W. (CMS/SC); Cuerdon, Susan J. (CMS/CMSO); Peltz, Linda L. (CMS/CMSO); Silverman, Jeffrey S. (CMS/CMSO); Green, Stacey D. (CMS/CMSO); Harris, Monica F. (CMS/CMSO); Garner, Angela D. (CMS/CMSO); Strauss, Richard (CMS/CMSO) |
| **Subject:** | Follow up to SHO conversation |

Kevin

I want to thank you and the members of your program for taking time to talk with us Wednesday about establishing compliance with the August 17th SHO letter. We covered a lot of information and as follow up, I am sending this recap of some of the information we discussed.

95% Assurance- When we looked at straight CPS data, it shows that there are 89.3 percent of children under 200 percent of the FPL with health insurance coverage, which includes Medicaid, SCHIP and other coverage in your State. We discussed the shortcomings of the CPS data, such as the Medicaid undercount and the fact that children are included in this calculation that would not be programmatically eligible because of their immigration status. You mentioned that there is a State survey that should be extremely helpful in refining this data for your denominator, that you would review. We also mentioned using the ever enrolled numbers for the SCHIP and Medicaid programs in the numerator.

Decrease in private insurance coverage- When we looked at CPS data for children under age 19, under 200 percent FPL, covered under private insurance by state 2002-2006, Washington had 35.60% in 2002 and 39.10% in 2006. So, according to this data source, Washington has actually seen an increase in private insurance coverage, rather than a decrease.

Reporting requirements- WA is current with current reporting requirements, specifically SARTs and SEDs. As I mentioned, we have not yet developed the reports related to crowd-out requirements.

Cost sharing strategy- We also discussed the requirement that cost sharing under the SCHIP State plan compared to the cost sharing required by competing private plans must not be more favorable to the public plan by more than one percentage point. As I mentioned, we are not prescribing what data source you use to show that MA meets this requirement, but we did share with you some resources we have found. The Agency for Healthcare Research and Quality, Medical Expenditure Panel Survey (MEPs) has several tables with State specific data that contain information on private sector health insurance costs. You may access these tables through www.meps.ahrq.gov. Our approach in determining the private sector cost sharing for purposes of comparison was to take the **Average annual Employee contribution- family coverage** and subtract the **Average annual Employee contribution- single coverage.** The difference between these numbers is effectively the family's cost for additional person coverage. This amount plus the **Average out of pocket (OOP) costs for children- private** could be used in calculating the **Avg. total cost sharing/Avg median income** to determine the percentage of family income under private plans. As I mentioned, we had taken a preliminary review of the MEPs data and are providing the information that we pulled off for CT-the specific charts used are noted at the bottom. We anticipate that you will work with your Insurance Commission or other data sources and only provide this as a sample of the available data.

| State | Avg annual total premium- family coverge[1] | Avg annual Employee contribution- family coverage[2] | Avg annual Employee contribution- single coverage[3] | Difference (effective cost for additional person coverage) | Avg OOP costs for children- private | SCHIP Premium | SCHI OOP |
|---|---|---|---|---|---|---|---|

4/7/2008

| Washington | $11,018 | $2,474 | $384 | $2,090 | $504 | $540 |

1- Source: Agency for Healthcare Research and Quality, Medical Expenditure Panel Survey (MEPs)- table II.D.1(2 www.meps.ahrq.gov
2- ibid. - table II.D.2(2005)
3- ibid. - table II.C.2(2005)

One year period of uninsurance- I want to reiterate that this is required only for new enrollees after August 16th, with incomes in excess of 250% of the FPL. In terms of exceptions to the period of uninsurance, we will review any proposed exceptions and justifications in making a determination.

We look forward to working with you on achieving compliance. You can let us know what approach you want to take, but it may work best if we set up a schedule to tackle each item one at a time. I think now is an appropriate time to begin gathering data sources and determining if you do indeed need to make legislative changes. Please contact me directly if you have additional questions.

Kathleen Farrell

Director
State Children's Health Insurance Program
Centers for Medicare and Medicaid Operations
(410) 786-1236
(410) 786-8534--fax

4/7/2008