UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
STATE OF NEW YORK, STATE OF ILLINOIS, STATE OF              :    ECF CASE
MARYLAND, STATE OF WASHINGTON,                              :
                        Plaintiffs,                         :    07-CV-8621 (PAC) (RLE)
                                                            :
        - against -                                         :
                                                            :    **DECLARATION OF**
UNITED STATES DEPARTMENT OF HEALTH AND                      :    **SUSAN J. TUCKER**
HUMAN SERVICES,                                             :
                                                            :
                        Defendant.                          :
                                                            :
------------------------------------------------------------x

SUSAN J. TUCKER hereby declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

    1.  The facts contained in this declaration are derived from my own knowledge, the records of the Maryland Department of Health and Mental Hygiene ("DHMH") kept in the ordinary course of its operations, and information provided to me by DHMH personnel.

    2.  I am the Executive Director of the Office of Health Services, Health Care Financing, DHMH. DHMH is the single state agency designated to administer the state Medicaid plan, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, and also administers Maryland's State Children's Health Insurance Program, Title XXI of the Social Security Act, 42 U.S.C. §§ 1397aa-jj ("SCHIP"), which is a portion of the Maryland Children's Health Program ("MCHP"). I have been employed by DHMH in various capacities relating to public health programs for approximately twenty years.

3. Since becoming Executive Director of the Office of Health Services in July, 2001, I have been responsible for proposing policy initiatives and developing new programs, interpreting and implementing Maryland's public health assistance policies in connection with both Medicaid and SCHIP, and promulgating regulations that ensure compliance with state and federal law. I have oversight responsibility for Maryland's submissions to and communications with the Centers for Medicare and Medicaid Services ("CMS"), which is the component of the United States Department of Health & Human Services ("HHS") that approves state Medicaid and SCHIP plans.

## MARYLAND'S SCHIP PROGRAM

4. Beginning July 1, 1998, Maryland expanded access to health insurance under the terms specified in SCHIP under Title XXI of the Social Security Act, through creation of MCHP.[1] Maryland's General Assembly authorized DHMH to establish the program by enacting Maryland Laws of 1998, ch. 110. Maryland implemented MCHP as a Medicaid expansion program, providing access to Medicaid services for eligible children under age 19 with family income too high for SOBRA Medicaid coverage but at or below 200 percent of the federal poverty level ("FPL"). Federal financial participation for the SCHIP children in MCHP is at the enhanced SCHIP rate.

---

[1] In addition to SCHIP children, MCHP includes (at the regular 50 percent match rate) pregnant women with income at or below 200 percent FPL, and children added to the Medicaid program by the Sixth Omnibus Budget Reconciliation of 1986 ("SOBRA") whose family incomes are too high for Temporary Assistance for Needy Families and no greater than 185 percent FPL for children younger than age 1; no greater than 133 percent FPL for children ages 1-5; and 100 percent FPL for children ages 6 through 18. For purposes of this declaration and the above-captioned action, MCHP will be used to refer to the eligibility groups with family incomes too high for SOBRA whose health care assistance is authorized by SCHIP.

2

5.  Effective July 1, 2001, Maryland implemented a separate child health program called "MCHP Premium." This expansion was authorized by Maryland Laws of 2000, ch. 16. For a modest monthly payment, MCHP Premium provides access to health insurance for children with family income above 200 percent but at or below 300 percent FPL. The premiums were set at two flat monthly rates, one for families with income above 200 percent but at or below 250 percent FPL, and another for families with income above 250 percent but at or below 300 percent of FPL. The rates were calculated as 2 percent of family income for a 2-person household at the base standard for each subgroup (*i.e.*, 200 percent and 250 percent FPL, respectively), and continue to be recalculated on this basis annually at the time FPL figures are updated. MCHP Premium coverage was offered through two enrollment options: comprehensive coverage through a qualifying employer-sponsored health benefit plan (for which Maryland contributed premium assistance), or "Medicaid look-alike" coverage through HealthChoice, Maryland's Medicaid managed care waiver program.

6.  The Maryland legislature amended MCHP most recently in 2003. Maryland Laws of 2003, ch. 203, § 1, codified at Maryland Code Ann. Health-General Article § 15-301 *et seq*. The legislation adjusted enrollment in the MCHP and MCHP Premium programs on a temporary basis. Effective July 1, 2003, the base income level for MCHP Premium was reduced from 200 percent FPL to 185 percent FPL, and children with family income above 185 percent FPL but at or below 200 percent FPL who applied for health benefits began to be enrolled in MCHP Premium at a cost equal to 2 percent of the income for a family of two at 185 percent of FPL. By September 1, 2003, children in the income range above 185 percent FPL and no greater than 200 percent FPL who were currently enrolled in the free Medicaid expansion program were

3

moved to Medicaid Premium. In addition, the General Assembly temporarily froze enrollment in MCHP Premium for children with family incomes above 200 percent FPL but not greater than 300 percent FPL effective July 1, 2003. The 2003 legislation also permanently eliminated the employer-sponsored enrollment option for MCHP Premium, with the result that all MCHP coverage was provided through HealthChoice, Maryland's Medicaid managed care program (conducted pursuant to a § 1115 demonstration waiver from CMS).

7.  Effective July 1, 2004, based on an expiration date included in the 2003 legislation, children in families with income above 185 percent FPL but at or below 200 percent FPL were moved back into the free MCHP Medicaid expansion, and the base income standard for Medicaid Premium was changed back from 185 percent FPL to 200 percent FPL. Also effective July 1, 2004, the enrollment freeze for MCHP Premium applicants with incomes greater than 200 percent FPL but no greater than 300 percent FPL was lifted.

8.  Effective June 1, 2007, Maryland amended its State Medicaid Plan to change MCHP Premium (for children with family income above 200 percent of FPL but at or below 300 percent of FPL) from a separate SCHIP plan to a Medicaid expansion program, using income disregards under 42 U.S.C. § 1396a(a)(10)(A)(ii)(XIV). Approved SPA attached as Exhibit ("Ex.") 1. A corresponding modification to the HealthChoice § 1115 waiver agreement was approved May 30, 2007. Approval letter attached as Ex. 2. CMS strongly recommended this amendment as a measure to protect MCHP Premium enrollees from an expected shortfall in the annual SCHIP allotment. This amendment did not require action by the state legislature. This moderate-income population was moved from a stand-alone SCHIP program to the Medicaid

expansion, with no change to the premium requirements, pursuant to the federal Deficit Reduction Act of 2005, sections 6041 and 6042 (codified at U.S.C. § 1396oA(a)), permitting cost sharing for certain groups under the Medicaid State Plan.

9. As of January, 2008, Maryland serves 82,703 children with family incomes too high for Medicaid but no greater than 185 percent FPL, and 9,449 children with family incomes above 185 percent FPL but no more than 200 percent FPL, in the free MCHP program. As of March, 2008, 8,322 children with family incomes above 200 percent but no more than 250 percent FPL and 3,266 children with family incomes above 250 percent FPL but no more than 300 percent FPL are enrolled in MCHP Premium.

10. Maryland operated its SCHIP program as a Medicaid expansion program from July 1, 1998 through June 30, 2001, as a combination program from July 1, 2001 through May 31, 2007, and as a Medicaid expansion program from June 1, 2007 forward, pursuant to the authority of Title XXI. *See* 42 CFR 457.10 (definition of "SCHIP Program" to include Medicaid expansion program, separate SCHIP program, and combination program).

### MCHP CROWD-OUT STRATEGIES

11. As required by SCHIP regulations promulgated in 2001, Maryland has included features in its MCHP enrollment requirements to prevent MCHP from substituting for available private insurance as a condition for extending MCHP Premium coverage to children with family incomes greater than 250 percent FPL. Most obviously, an applicant, or an enrollee facing annual redetermination, is determined not to be eligible for MCHP or MCHP Premium if he or she has benefits under an employer sponsored health benefit plan with dependent coverage or under health insurance coverage. Children of state employees who have access to dependent coverage

under a state health benefit plan are likewise not eligible, unless the state's contribution toward the cost of dependent coverage for the child is $10 per month or less. Finally, Maryland imposes a six-month waiting period prior to MCHP enrollment for applicants who voluntarily terminated coverage under an employer sponsored health benefit plan. State law sets forth limited circumstances under which termination of coverage is not considered voluntary. Md. Code Ann., Health-General Article, § 15-302(b)(2).

12. Maryland screens MCHP applicants, as well as enrollees at annual or other redeterminations, to ensure that they have not voluntarily dropped private coverage within the past six months, that they are not covered dependents under a family member's employer sponsored health benefit plan, and that they do not have access to subsidized dependent coverage through the state employment of a family member. In addition, Maryland monitors enrollees on a monthly basis, using the services of a third-party liability contractor, to verify that children receiving MCHP services are not subject to employer-sponsored coverage or health insurance coverage.

13. Maryland, through the Maryland Health Care Commission, monitors the actual incidence of crowd-out, assessing the extent to which crowd-out is experienced. In the six years during which the Commission has been monitoring crowd-out and reporting to OHS, Maryland has never detected a problem necessitating additional preventive strategies.

14. As noted in paragraphs 5 and 6 above, Maryland offered an employer sponsored insurance option (*i.e.*, furnishing MCHP services through dependent coverage under a family member's employer health benefit plan) to MCHP Premium enrollees from July 1, 2001 through June 30, 2003. Because this enrollment option contributed payments to private health insurance plans, rather than substituting public coverage, it may be considered a deterrent to

crowd-out. Interestingly, although CMS urged Maryland to amend MCHP in 2007 based on an anticipated shortfall in the federal allotment, CMS did not recommend that Maryland revive the employer sponsored insurance option, or otherwise strengthen crowd-out measures, either in 2007 or at any other time prior to August 17, 2007.

## CMS' AUGUST 17, 2007 LETTER

15. On August 17, 2007, CMS issued a letter to administrators of state SCHIP programs requiring states to implement five crowd-out procedures and make three assurances as a condition for enrolling children with family incomes above 250 percent FPL. Am. Compl. Ex. B ("August 17 letter"). Specifically, to ensure that SCHIP expansion did not replace existing private health insurance coverage, CMS required a state to (1) impose a one-year waiting period for SCHIP enrollment after voluntary termination of private coverage; (2) ensure that the cost sharing imposed on SCHIP enrollees was not lower than the cost of comparable private coverage by more than one percent of family income, unless SCHIP cost sharing was already set at the five-percent statutory maximum; (3) monitor health insurance status, including coverage furnished by a non-custodial parent, at the time of SCHIP application; (4) verify insurance status for enrollees, including coverage furnished by a non-custodial parent, through insurance databases; and prevent employers from changing health benefits available for employees' dependents in ways that would encourage a shift to SCHIP coverage. August 17 letter at 1-2. In addition, each state that seeks to cover moderate-income children must assure CMS that (1) at least 95 percent of children in the State with family income less than 200 percent FPL who are eligible for Medicaid or SCHIP are enrolled; (2) the number of targeted low-income children covered by employer-sponsored health benefit plans has not decreased by more than two percent over the preceding five years; and (3) the

7

state is current with all SCHIP and Medicaid reporting requirements and also reports data relating to the crowd-out requirements on a monthly basis. August 17 letter at 2. The letter required states (like Maryland) with approved SCHIP expansions for children with family incomes exceeding 250 percent FPL to adopt the crowd-out processes and assurances within 12 months, by means of amendments to the SCHIP state plan or to the § 1115 demonstration waiver agreement depending on the state's method for delivering SCHIP services. August 17 letter at 2.

16. A letter issued to SCHIP Directors on January 28, 2008 reiterated that the requirements in the August 17 letter were intended to be effective August 16, 2008 for states that currently provide coverage to children with family incomes greater than 250 percent FPL, and further stated that the restriction on enrollment of moderate-income children "was specifically designed to apply to new applicants, rather than to individuals currently served by the program." CMS Letter of January 28, 2008, attached as Ex. 3. Although this language implies that existing moderate-income enrollees would remain unaffected by the August 17, 2007 restrictions, DHMH's telephone contacts with CMS prior to the January 28 letter specified that, in addition to new applicants, the restrictions would be applicable to current enrollees at the time of annual redetermination following the August 16, 2008 effective date.

17. Through informal telephone communications between August 17, 2007 and the present, CMS has consistently indicated that the provisions of the August 17 letter will affect eligibility of MCHP Premium children with family incomes above 250 percent FPL beginning August 17, 2008. CMS has expressed interest in discussing how Maryland plans to comply, but has left no doubt that compliance is required for continued eligibility of this income group.

## THE AUGUST 17, 2007
## LETTER HARMS MARYLAND

Crowd-out strategies

18.  In order to continue to enroll in MCHP Premium children with family incomes between 250 percent FPL and 300 percent FPL after August 16, 2008, and in order to avoid disenrolling current MCHP Premium participants in that income range who are subject to annual redetermination after August 16, 2008, Maryland must make three crowd-out reforms. First, Maryland must require children who have lost private health insurance coverage due to voluntary termination—including, for example, children whose parents can no longer afford dependent coverage through their employer sponsored health benefit plan because of a rate increase—to wait twelve months to enroll in MCHP. This is double Maryland's current waiting period, and is likely to increase subsequent health costs for affected children due to lack of access to required health care, including preventive care, for a full year.

19.  As a second new crowd-out strategy, Maryland must ascertain the cost to families of private health insurance comparable to MCHP, and raise the cost to families of MCHP Premium so that the public premium is not cheaper than private rates by more than 1 percent of family income, or must raise the public premiums (currently set at 2 percent of the base income standard) to the statutory maximum of 5 percent of the family's actual income. Maryland currently has no mechanism for acquiring necessary data on private coverage for this comparison. Further, there is no reason to believe that the maximum difference of one percent can be maintained even at the five percent level, so the ultimate effect of the comparable-cost requirement will presumably be to fix premiums at the statutory maximum. And because children cannot

9

participate in MCHP Premium if the family is unwilling to pay the premium, the effect of more than doubling the premium will probably be to deprive eligible children from access to both public and private sources of health care coverage.

        20. The August 17 letter also requires as a crowd-out measure that Maryland "[p]revent[] employers from changing dependent coverage policies that would favor a shift to public coverage." August 17 letter at 1. It is not clear precisely what acts on the part of employers CMS expects states to prohibit, but they appear to be beyond Maryland's control. If CMS wishes Maryland and other states to prevent employers from altering their personnel policies for the purpose of reducing or delaying employees' ability to enroll health benefits the employers have decided to offer, most of these issues have been federally preempted by the "portability" requirements of the Health Insurance Portability and Accountability Act of 1996 (administered by the Department of Labor, the IRS, and CMS). To the extent CMS intends to require Maryland to mandate that employers offering health benefit plans with dependent coverage continue doing so, such state regulation is preempted by the Employment Retirement Income Security Act ("ERISA") with respect to employer sponsored plans. If CMS wants states to require non-ERISA employers to maintain health insurance benefits at the same rate of employee participation, or the same percentage of employee contribution, the employers will be able to have these mandates judicially invalidated on due process grounds; small employers that rely on coverage purchased from issuers of health insurance are limited by rate structures over which they have little or no control. Whatever this requirement means, it appears impossible for any combination of state agencies to accomplish.

Assurances

Assurances

21.     Based on CPS data, Maryland calculates its participation rate for children whose family income is below 200 percent FPL at 77 percent. In order to continue offering MCHP Premium to moderate-income children after August 16, 2008, this rate must be increased to 95 percent. According to scholarly sources other than CMS officials, no state has achieved a 95 percent participation rate. Consequently, even if Maryland acquires data more accurate and timely than CPS, it seems unlikely that the actual participation rate will meet the 95 percent standard. This requirement will prevent Maryland from furnishing affordable coverage to children with moderate family incomes but will not increase services to targeted low-income children.

22.     The August 17 letter also requires Maryland to assure CMS that the number of targeted low-income children with private health insurance has not decreased by more than 2 percent over the preceding five years. August 17 letter at 2. Even if Maryland can accurately assess change in private insurance coverage for this income group using data collected by the Maryland Health Care Commission, the state will not be in a position to control the amount of decrease in private insurance, particularly on a retrospective basis. Moreover, the mere existence of such a decline does not reasonably establish that it has been caused by substitution of SCHIP coverage.

Dated:  Baltimore, MD
        April 14, 2008

_____
SUSAN J. TUCKER