UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF WASHINGTON,

              Plaintiffs,

- against -

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

07-CV-8621 (PAC) (RLE)

**PLAINTIFFS' STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Rule 56.1 of the Local Civil Rules of this Court, Plaintiff States, by their attorneys ANDREW CUOMO, Attorney General of the State of New York; ROBERT M. MCKENNA, Attorney General of the State of Washington; DOUGLAS F. GANSLER, Attorney General of the State of Maryland; and LISA MADIGAN, Attorney General of the State of Illinois; hereby submit the following statement of material facts as to which they contend there is no genuine issue of fact to be tried:

**THE PARTIES**

1. Plaintiff State of New York, through its Department of Health, operates the New York State Child Health Plus Program ("CHPlus"), which is New York's participating program within the federal State Children's Health Insurance Program. (SCHIP). Declaration of Judith Arnold ("Arnold Decl.") ¶ 1.

2. Plaintiff State of Illinois, through its Department of Healthcare and Family Services Division of Medical Programs, operates the All Kids program, which includes Illinois's SCHIP participating child health insurance plan. 215 ILCS 170/1 *et seq.*

3.      Plaintiff State of Maryland, through its Department of Health and Mental Hygiene, operates the Maryland Children's Health Program ("MCHP"), which is Maryland's SCHIP program. Declaration of Susan J. Tucker ("Tucker Decl.") ¶ 2.

4.      Plaintiff State of Washington, through its Department of Social and Health Services ("DSHS"), operates Washington's SCHIP program. Declaration of Roger Gantz ("Gantz Decl.") ¶ 2.

5.      Defendant Department of Health and Human Services, through its Center for Medicare and Medicaid Services ("CMS"), administers SCHIP. 42 U.S.C. § 1397ff.

**STATUTORY AND REGULATORY BACKGROUND**

6.      Congress enacted SCHIP in 1997 as Title XXI of the Social Security Act (Title XXI). Pub. L. No. 105-33, title IV, sec. 4901(a). SCHIP is a joint federal-state program. Arnold Decl. ¶ 4. Under SCHIP, states provide health coverage to uninsured children in families who are ineligible for Medicaid, but still cannot afford other health insurance, and the federal government reimburses the states for a substantial portion of their expenditures. *Id.* The federal government makes matching funds available to states with approved SCHIP plans through capped allotments, based on a formula that takes into account the number of low-income children in a state. *Id.* Each state is allotted a specific maximum amount that it can receive as matching funds during each federal fiscal year. 42 U.S.C. § 1397dd.

7.      From the inception of the program and through August 17, 2007, the SCHIP statute and implementing regulations have been interpreted and applied to afford participating states with considerable flexibility in how they comply with general federal requirements for providing health insurance coverage to children. Declaration of Cynthia R. Mann ("Mann Decl.") ¶ 7.

8.   SCHIP allows states to establish eligibility rules, including those relating to income and resources. 42 U.S.C. § 1397bb(b); 42 C.F.R. § 457.320(a). This allows the states to determine how to define family income. 42 C.F.R. § 457.10 ("Family income means income *as determined by the State* for a family as defined by the State.") (emphasis added); *see also* 42 U.S.C. § 1397bb(b)(1) (Requiring that SCHIP State Plans include "a description of the standards used to determine the eligibility of targeted low-income children for child health assistance under the plan [which standards] include (to the extent consistent with this subchapter) those relating to [among other elements] income and resources . . . .") The regulations state that "[w]ithin broad Federal rules, each State decides eligible groups, types and ranges of services, payment levels for benefit coverage, and administrative and operating procedures." 42 C.F.R. § 457.1.

9.   HHS Secretary Michael O. Leavitt has acknowledged that this flexibility allows states to "effectively raise the income eligibility threshold." Gantz Decl., Ex. C.

10.  In general, the SCHIP statute permits a state to cover a child who is either (a) a "low income child" or (b) a child whose family income, "as determined under the State child health plan," exceeds, but is no more than 50 percentage points above, the state's Medicaid eligibility standard. 42 U.S.C. § 1397jj(b). A "low income child" is in turn one "whose family income is at or below 200 percent of the poverty line for a family of the size involved." 42 U.S.C. § 1397jj(c)(4). The "poverty line," also called the "Federal Poverty Level" ("FPL"), refers to the figures annually updated by Defendant in January or February of each year in the Federal Register. 42 U.S.C. § 1397jj(c)(5); 42 U.S.C. § 9902(2).

11.  For 2007 the FPL was fixed by Defendant for a family of three at $17,170 and for a family of four at $20,650; in January of 2008, these figures were increased to $17,600 and $21,200

respectively. 72 Fed. Reg. 3147; 73 Fed. Reg. 3971.

12. Defendant, through CMS, has adopted regulations to implement SCHIP. 42 C.F.R. pt. 457. The regulations contain various reporting requirements so that Defendant can determine whether the state plans "substantially comply with the requirements" of Title XXI. 42 U.S.C. § 1397ff(c)(1). The Federal government reimburses participating States for a share of their expenditures in providing health coverage under an approved plan, with each State having a maximum limit on the amount of matching funds it can receive.

13. To be eligible for matching funds under SCHIP, a state must submit a state child health plan for approval by CMS. Arnold Decl. ¶ 4. A state may amend its approved state child health plan in whole or in part at any time by submitting a state plan amendment to Defendant for approval. *Id.*

14. Before enrolling a child in its SCHIP program, states screen for eligibility for Medicaid. 42 C.F.R. § 457.350. Only children who are not eligible for Medicaid can be enrolled in the SCHIP program. *Id.*

15. Many states, including the State Plaintiffs, have utilized income "disregards," *i.e.,* excluding certain elements of gross family income, when determining whether applicants meet SCHIP income eligibility standards. Arnold Decl. ¶ 7; Gantz Decl. ¶ 27; Tucker Decl. ¶ 8. This mechanism allows states to offer coverage through SCHIP to a broader segment of the population than would be the case if they were required to consider only applicants' gross income, without accounting for expenditures such as child care, certain work-related expenses, variations in the cost of living in different states, and other expenses that make it impractical, if not impossible, for many working families to afford private health insurance. States have been utilizing this "disregard"

procedure with Defendant's knowledge and approval since the initial enactment of SCHIP. Mann Decl. ¶ 8; Arnold Decl. ¶ 7. Currently, Defendant has approved 14 states' SCHIP programs covering children at income levels above 250% of FPL. Mann Decl. ¶ 15 and Ex. C.

16. In order to ensure that state benefits do not substitute for other sources of health coverage, state health plans must describe "reasonable procedures" to prevent such substitution. 42 C.F.R. § 805. Consistent with the approach to maximize the states' flexibility, Defendant determined in promulgating the initial regulations to implement SCHIP that it did not have the legal authority to mandate states to adopt any particular substitution-prevention procedure. Mann Decl. ¶ 12; 64 Fed. Reg. 60922 (Nov. 8, 1999).

17. Consequently, the SCHIP regulations adopted in January 2001 require only that states describe their substitution-prevention policies in their state plans. Mann Decl. ¶ 13. Defendant mandated no specific substitution or "crowd-out" strategy except with regard to premium assistance, which required a six-month waiting period but allowed no more than a twelve-month waiting period. Mann Decl. ¶ 13. Defendant specifically encouraged states to adopt strategies other than waiting periods. 66 Fed. Reg. 2490, 2603. With respect to the premium-assistance waiting periods, Defendant also encouraged states to adopt exceptions. 66 Fed. Reg. 2490, 2609 (Jan. 11, 2001).

18. Different states have adopted different procedures for meeting general federal SCHIP requirements, such as waiting periods of various lengths, cost-sharing requirements, monitoring health insurance status at the time of application, verifying family insurance status through databases, and preventing employers from changing dependent coverage policies that would favor a shift to public coverage. Mann Decl. ¶¶ 19-21; Arnold Decl. ¶ 16. Before issuing its August 17, 2007 directive, Defendant had never disapproved a state plan because of insufficient substitution-

prevention strategies. Mann Decl. ¶ 22.

19.     SCHIP allows states, if they choose, to impose cost-sharing requirements on families. Mann Decl. ¶ 9. As of January 2008, 34 states charge premiums, ranging from $50 per annum in Texas to $3000 per annum in Tennessee for a family with two children. Mann Decl. ¶ 17 and Ex. D. Before issuing its August 17, 2007 directive, Defendant had never imposed any cost-sharing requirement as a condition for approval of a state plan. Mann Decl. ¶ 18.

**STATE SCHIP PROGRAMS**

  i.     **New York**

20.     New York first enacted CHPlus in 1991. Arnold Decl. ¶ 6. CHPlus became a federally approved SCHIP plan in 1998. *Id.* As of August 2007, CHPlus had enrolled nearly 400,000 children. *Id.*

21.     With Defendant's approval, CHPlus has utilized certain income disregards to provide coverage to children with gross family income at or below 250% of FPL since July 1, 2000. Arnold Decl. ¶ 7; N.Y. McKinney's Pub. Health Law § 2511(2)(a)(ii). Because children whose family incomes are below 200% of FPL for children under age one, 133% for children one through five, and 100% for children six through eighteen qualify for Medicaid in New York, 97% of all enrolled children in either program are from families below 200% of FPL. Arnold Decl. ¶ 8.

22.     Through these programs, New York reduced the number of uninsured children in the State by 41% from 1997 to 2006. Arnold Decl. ¶ 9. As a result, the proportion of enrollees with a regular source of health care increased from 86% to 97%, the proportion of children receiving preventative health-care visits increased from 74% to 82%, and the unmet health-care needs of these children decreased by more than one-third. Arnold Decl. ¶ 9. The long-term uninsured and lowest-

income children demonstrated the most dramatic gains after enrollment. *Id.*

23. In early 2007, by statute New York extended eligibility for CHPlus to uninsured children whose families' gross incomes are at or below 400% of FPL, contingent on federal financial participation. Arnold Decl. ¶ 10. New York submitted a state plan amendment to Defendant on or about April 12, 2007 ("SPA #10"). *Id.*

24. New York expanded its program because statistics from the United States Census Bureau showed that the fastest growing group of uninsured children in New York was the group between 250% and 400% of FPL. Arnold Decl. ¶ 12. Also, New York has one of the highest costs of living in the country, particularly in the downstate counties. Arnold Decl. ¶ 13-14. This expansion primarily relied on income disregards. Arnold Decl. ¶ 11.

25. The expansion did not provide free coverage. Premiums rose with family income. *Id.*

26. New York intended its premium to help prevent substitution for other available health coverage. Arnold Decl. ¶ 16. To that end, the expansion plan imposes a six-month uninsurance requirement, subject to certain exceptions beyond the family's control. *Id.*

27. New York has not found substitution to be a problem; only 1.3% of new CHPlus enrollees have dropped insurance from group health plans. *Id.*

    **ii.**     **Washington's SCHIP Program**

28. Washington's SCHIP Program was created following the enactment of Wash. Laws of 1999, ch. 370, which authorized DSHS to create the program consistent with Title XXI of the Social Security Act. Gantz Decl. ¶ 6. The program began on February 1, 2000, after it received federal approval of its child health plan. Gantz Decl. ¶ 6.

29. As of April 2008, approximately 13,000 children up to age 19 were enrolled in SCHIP. Gantz Decl. ¶ 6. Washington's plan has provided coverage to children up to age 19 whose families' incomes are between 200 to 250% of the FPL. Gantz Decl. ¶ 6. Coverage costs $15 a month per child, with a family cap of $45 per month. Gantz Decl. ¶ 6. Under Washington's state SCHIP plan, children who are eligible for Medicaid or who have any creditable health coverage are ineligible for SCHIP. Gantz Decl. ¶ 6. Between 2000 and 2006, Washington reduced the number of uninsured children in the State by 25% through implementation of its SCHIP program. Gantz Decl. ¶ 6. Washington has never utilized its share of federal funds allotted for SCHIP and in fact has returned more than $125 million that it was unable to use. Gantz Decl. ¶ 7.

30. In 2007, the Washington Legislature enacted Wash. Laws of 2007, ch. 5, which authorized expansion of Washington's SCHIP program to include children from families whose income does not exceed 300% of the FPL, effective January 1, 2009. Gantz Decl. ¶ 8. DSHS has begun planning and outreach efforts necessary to comply with this legislative directive. Gantz Decl. ¶ 12. Implementing the law will also require approval of a State Plan amendment by CMS and modification of Washington's eligibility regulations through the State rule-making process. *Id.*

31. Under the legislation to expand coverage, Washington expects to enroll approximately 3,000 low-income children in families with incomes above 250% of the federal poverty level by July 2009 and approximately 8,000 by June 2010. Gantz Decl. ¶ 8.

32. Washington's expanded SCHIP program will employ several strategies to minimize substitution of SCHIP coverage for available private coverage: (1) families will be required to disclose existing employer-based health insurance coverage on a SCHIP application under penalty of perjury, and children with such existing coverage will not be eligible for SCHIP coverage; (2)

families will be required to enroll their children in available employer-sponsored health care when it is cost-effective for the State to contribute to the cost of such care rather than enrolling the children in the SCHIP program; (3) employer-sponsored plans will be required to enroll such children regardless of otherwise applicable enrollment limitations; (4) children from families whose incomes are greater than 250% of the FPL and who drop employer-based health insurance coverage to obtain SCHIP coverage will have a four-month waiting period before they can be enrolled in SCHIP, with limited exceptions; and (5) families will pay a monthly premium toward the cost of their coverage based on a sliding scale.  Gantz Decl. ¶ 11.

### iii. Maryland's SCHIP Program

33. Maryland created MCHP as a Medicaid expansion program in 1998.  Tucker Decl. ¶ 4.  MCHP provides access to Medicaid services for eligible children under age 19 whose family income is below 200% of FPL.  *Id.*

34. Since July 1, 2001, MCHP has provided access to health insurance for children whose families' incomes are between 200% and 300% of FPL.  Tucker Decl. ¶ 5.  Children whose family income lies between 200% and 250% of FPL pay a premium of 2% of family income for a two-person household of 200% of FPL.  *Id.*  Children whose family income lies between 250% and 300% of FPL pay a premium of 2% of family income for a two-person household of 250% of FPL.  *Id.*

35. Part of the 2001 legislation amended the MCHP program to create a stand-alone SCHIP component for the MCHP premium population, *i.e.,* between 200% and 300% of FPL.  Tucker Decl. ¶¶ 5, 10.  Upon Defendant's recommendation, Maryland amended its program in 2007 so that MCHP would once again be a Medicaid expansion program.  Tucker Decl. ¶¶ 8, 10.

36. As of January 2008, Maryland serves 82,703 children with family incomes too high

9

for Medicaid but no greater than 185% of FPL and 9,449 children with family incomes between 185% and 200% of FPL in the free MCHP program. Tucker Decl. ¶ 9. As of March 2008, Maryland has 11,588 children with family incomes between 200% and 300% enrolled in MCHP premium. Tucker Decl. ¶ 9.

37. To prevent substitution for available private coverage, Maryland declares ineligible any applicant with benefits under an employer-sponsored health benefit plan with dependent coverage or under health insurance coverage. Tucker Decl. ¶ 11. Children of state employees with access to coverage under a state health benefit plan are likewise ineligible unless the state's contribution toward the cost of dependent coverage for the child is $10 per month or less. *Id.*

38. Maryland imposes a six-month waiting period before MCHP enrollment for applicants who voluntarily terminate coverage under an employer-sponsored health benefit plan. Tucker Decl. ¶ 11.

39. Maryland screens MCHP applicants and enrollees to ensure that they have not voluntarily dropped private coverage within six months, that they are not covered dependents under a family member's employer-sponsored plan, and that they do not have access to subsidized dependent coverage through the state employment of a family member. Tucker Decl. ¶ 12.

40. Maryland monitors crowd-out and assess the extent of crowd-out. Tucker Decl. ¶ 13. In six years of such monitoring, Maryland has never detected a problem that would necessitate additional crowd-out strategies. *Id.*

41. From July 2001 to June 2003, Maryland offered an employer-sponsored insurance option that contributed payments to private health insurance plans rather than substituting public coverage. Tucker Decl. ¶¶ 5, 6, 14. When Defendant recommended that Maryland amend MCHP

in 2007, Defendant did not recommend that Maryland revive this option or otherwise strengthen crowd-out-prevention measures. Tucker Decl. ¶ 14.

### iv.  Illinois's SCHIP Program

42. Illinois enacted its Children's Health Insurance Program Act ("CHIP") in 1998. 215 ILCS 106/1. Illinois subsequently expanded CHIP in the Covering All Kids Health Insurance Act in 2005. 215 ILCS 170/1.

43. CHIP covers children whose family income is below 200% of FPL. 215 ILCS 106/20(a)(2).

44. Children whose family income is above 150% of FPL must pay premiums for CHIP coverage. Premiums range from $15 per month for a single child to $40 per month for five children or more. 215 ILCS 106/30(a)(2).

**THE AUGUST 17, 2007 LETTER**

45. On August 17, 2007, Defendant sent a letter to all state SCHIP directors ("the August 17 Letter"). The August 17 Letter imposed new rules, which it explicitly described as "requirements," to prevent crowd-out and to limit SCHIP expansion. Arnold Decl., Ex. 9. With respect to crowd-out measures, the August 17 Letter required all states to employ all of the following crowd-out-prevention strategies:

   a.  a state plan must charge premiums of at least 5% of family income or at least as much as competing private plans, within 1% of family income;

   b.  a state must establish a minimum of a one-year period of uninsurance;

   c.  monitoring and verification must include information regarding coverage provided by a non-custodial parent.

Arnold Decl., Ex. 9.

46. The August 17 letter further required certain assurances of outcomes of the states' outreach procedures:

  a. at least 95% enrollment of children below 200% of FPL

  b. no decrease by more than two percentage points of the number of target-population children insured through private employers

  c. monthly reports of data relating to crowd-out requirements

*Id.*

47. On August 20, 2007, during a telephone conference, Kathleen Farrell, director of Defendant's CMS SCHIP division, instructed New York that the requirements of the August 17, 2007 Letter were mandatory. Arnold Decl. ¶ 20. In other telephone conversations, Defendant has instructed Maryland that compliance with the dictates of the August 17, 2007 is mandatory. Tucker Decl. ¶ 17. On February 26, 2008, Ms. Farrell similarly instructed Washington that these requirements are mandatory. Declaration of Kevin Cornell ("Cornell Decl.") ¶¶ 4, 5.

48. Defendant also followed these telephone conversations with an e-mail to Washington State's SCHIP regional representative Kevin Cornell on February 29, 2008, which stated the goal of "achieving compliance" and stated that these crowd-out prevention procedures were "required" for new enrollees. Cornell Decl., Ex. A. Defendant also sent a letter to all SCHIP directors on January 28, 2008, which discussed the "required crowd-out strategies and assurances" of the August 17 Letter. Tucker Decl., Ex. 3; Gantz Decl., Ex. B.

49. After the August 17 Letter and the August 20 teleconference, New York submitted written responses to Defendant's questions and several proposed adjustments to SPA #10 designed to accommodate Defendant's concerns without sacrificing the plan's objectives. Arnold Decl. ¶ 20.

50. Defendant disapproved SPA #10 on grounds precisely corresponding to those set forth by Defendant for the first time in its August 17 directive, namely that SPA #10 had failed to provide assurances that New York had enrolled at least 95% of children under 200% of FPL, failed to include a one-year uninsurance requirement, and proposed cost-sharing premiums that would be lower than 5% of family income and lower than those of competing plans by more than 1% of family income. Arnold Decl. ¶ 21. This disapproval stated that it was "consistent with the August 17, 2007 letter to State Health Officials." Arnold Decl. ¶ 21 and Ex. 10.

51. By letter dated October 31, 2007, New York requested reconsideration of Defendant's disapproval on the grounds that the sole basis for disapproval was the failure to meet new and improper requirements set forth in the August 17 Letter. Arnold Decl. ¶ 22 and Ex. 11.

52. New York's reconsideration request triggered an administrative proceeding, but in a letter dated November 30, 2007, Defendant reframed the issues to be determined at the reconsideration hearing in that proceeding with no mention of whether Defendant could legally require the new mandates of the August 17 Letter. Arnold Decl. ¶ 22 and Ex. 12. Defendant published a Notice of Hearing in the Federal Register framing the issues as Defendant had defined them in its response to New York's reconsideration request. 72 Fed. Reg. 68888.

53. In April 2008, the New York Legislature allocated $118 million in State funds to finance the planned expansion of CHPlus. Arnold Decl. ¶ 25. The expansion will be effective September 2008. *Id.* New York has estimated that approximately 72,000 children will ultimately receive health coverage under the expansion. *Id.*

54. The waiting period imposed by the August 17 directive for new enrollees, twelve months, is twice the length of Maryland's and New York's current waiting period, and three times

that of Washington State. Arnold Decl. ¶ 16; Tucker Decl. ¶ 18; Gantz Decl. ¶ 11.

55.    During the August 20 teleconference between Defendant and New York, New York offered to increase the waiting period to twelve months if Defendant would allow some exceptions. Arnold Decl. ¶ 26. Defendant responded that by order of Dennis G. Smith, director of CMS, that it would allow no exceptions. *Id.*

56.    The Plaintiff States currently possess no mechanism for acquiring necessary data on private coverage to compare public premiums to private premiums. Tucker Decl. ¶ 19. Plaintiff States' ability to regulate employer-sponsored health coverage is limited by the Employment Retirement Income Security Act. Tucker Decl. ¶ 20; Gantz Decl. ¶ 21.

57.    According to the Urban Institute, no state has ever achieved 95% participation of children below 200% of FPL in SCHIP. Genevieve Kenny, "The Failure of SCHIP Reauthorization: What Next?" The Urban Institute (March 2008). New York has achieved a participation rate of 88%. Arnold Decl. ¶ 23(b). Washington has achieved a participation rate of 93.5%. Gantz Decl. ¶ 18. Maryland has achieved a participation rate of 77%. Tucker Decl. ¶ 21.

58.    Before the August 17 Letter, April 16, 2008, Defendant approved a Pennsylvania expansion of its SCHIP program to 300% of FPL with a six-month uninsurance period for the expansion group, with exceptions for children under age two whose parents lost their jobs. Mann Decl. ¶ 24. Louisiana, which submitted its SCHIP expansion proposal on September 5, 2007, was not permitted to expand its SCHIP program beyond 250% of FPL. Mann Decl. ¶ 26. Since the August 17 directive nine other states have sought federal approval of SCHIP expansions up to 300% of FPL, but no such expansions have received approval. Mann Decl. ¶ 27. At least 14 states whose SCHIP programs cover children above 250% of FPL, including Pennsylvania, currently face the

threat of a compliance proceeding.  Mann Decl. ¶ 28.

Dated: New York, New York
       April 16, 2008

                                              Respectfully submitted,

FOR PLAINTIFF STATE OF NEW YORK
ANDREW M. CUOMO
Attorney General

/s/     John M. Schwartz
By:     John M. Schwartz
        Joshua Pepper
        Assistant Attorneys General
Office of the Attorney General
120 Broadway, 24th Floor
New York, New York 10007
(212) 416-8559

FOR PLAINTIFF STATE OF ILLINOIS
LISA MADIGAN
Attorney General
By:     Karen Konieczny
        Assistant Attorney General
Office of the Illinois Attorney General
160 North LaSalle Street, Suite N1000
Chicago, Illinois 60601
(312) 793-2380

FOR PLAINTIFF STATE OF MARYLAND
DOUGLAS F. GANSLER
Attorney General
By:     Joel Tornari
        Lorie Mayorga
        Assistant Attorneys General
Office of Attorney General
Maryland Department of Health and Mental Hygiene
300 West Preston Street, Room 302
Baltimore, Maryland 21201
(410) 767-1859

FOR PLAINTIFF STATE OF WASHINGTON
ROBERT M. MCKENNA
Attorney General
By:     William L. Williams
        Senior Assistant Attorney General
        Catherine R. Hoover
        Assistant Attorney General
Office of the Attorney General
7141 Cleanwater Dr. SW
PO Box 40124
Olympia, Washington 98504-0124
(360) 586-6565