DDEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland 21244-1850




**Center for Medicaid and State Operations**

MAY - 9 2008

Mr. Gary D. Alexander
Director
Department of Human Services
600 New London Avenue
Cranston, RI 02920

Dear Mr. Alexander:

Thank you for submitting information and data supporting Rhode Island's compliance with existing requirements under the State Children's Health Insurance Program (SCHIP) for the effective and efficient provision of child health assistance coordinated with other sources of health benefits coverage. The August 17, 2007 State Health Official (SHO) letter discussed the Center for Medicare & Medicaid Services' (CMS) review strategy for evaluating State compliance with requirements under 2102(b)(3)(C) of the Act and with regulations at 42 CFR § 457.805 for reasonable crowd-out procedures when States expand eligibility to effective family income levels above 250 percent of the Federal poverty level (FPL).

Rhode Island has provided an assurance that 95 percent of the children at or below 200 percent of the FPL in the State have health insurance coverage. Rhode Island's supporting data was based on refining the Current Population Survey (CPS) data to exclude children who would not be programmatically eligible for Medicaid or SCHIP coverage. Our evaluation of the methodology and resulting rate of coverage concluded that Rhode Island can support this assurance.

In addition, Rhode Island has provided an assurance that the number of children with family incomes below 200 percent of the FPL in the State who are insured through private employers has not decreased by more than two percentage points over the prior five-year period. And the CPS data submitted for the most recent five-year period available (2002-2006) not only supports Rhode Island's assurance, but shows an increase of 4.29 percent in private coverage for this population, from 37.86 percent in 2002 to 42.15 percent in 2006.

Rhode Island is also current with all reporting requirements in SCHIP and Medicaid and, when the instrument and process is established, the State has provided an assurance that it will report data related to crowd-out on a monthly basis.

The cost sharing component of the SHO letter reflects that cost sharing under the State's public program, when compared to cost sharing required by competing private plans, should not be more favorable to the public plan by more than one percentage point, unless the public plan's cost sharing is set at the five percent family cap. Cost sharing under Rhode Island's SCHIP program for children with effective family income levels above 250 percent FPL is set at

3.9 percent of family income. When compared to the publicly available data of the Medical Expenditure Panel Survey, which estimates cost sharing required by competing private plans at 2.2 percent of family income, cost sharing under Rhode Island's SCHIP program is consistent with the cost-sharing guidelines provided in the SHO letter.

Rhode Island proposed an alternative strategy to the minimum of one-year period of uninsurance referenced in the SHO letter. The State proposes that mandatory enrollment in RIte Share, the State's premium assistance program, if the SCHIP or Medicaid eligible individual has access to Department of Human Services (DHS)-approved employer-sponsored insurance, is an effective strategy to prevent substitution of private coverage. The program employs data tape matches with commercial insurers and State laws require employers to provide information about their health insurance benefits to DHS. The State has publicly reported that for every 1,000 persons enrolled in RIte Share, the State saves more than $1million. RIte Share eliminates the need for a waiting period, as it captures cost-effective employer insurance for Medicaid eligible persons and requires mandatory enrollment in employer-sponsored insurance if available. CMS has determined that this is an acceptable alternative to the one-year period of uninsurance.

Rhode Island monitors and verifies the existence of coverage through non-custodial parents by means of tape matches with commercial insurers and information gathered on the RIte Care application and renewal. Rhode Island ensures that children identified as having private insurance coverage through non-custodial parents receive only wrap-around services through Medicaid. This systematic process uses information from external sources including tape matching with commercial insurers, RIte Care applications, and the Rhode Island Child Support Enforcement division. The information is then evaluated to identify necessary requirements and follows the RIte Share process for enrollment into the commercial insurance. This comprehensive process is consistent with the crowd-out prevention guidance outlined in the SHO letter regarding monitoring and verification of coverage through non-custodial parents.

We appreciate Rhode Island's efforts to minimize the substitution of SCHIP coverage for private coverage and share your goal of providing health care to eligible, low-income children through the Medicaid and SCHIP programs.

Sincerely,

Herb B. Kuhn
Deputy Administrator
Acting Director, Center for Medicaid and State Operations