UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

STATE OF NEW YORK, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF WASHINGTON,
                    Plaintiffs,

    - against -

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

                    Defendant.

------------------------------------------------------------x

ECF CASE

07-CV-8621 (PAC) (RLE)

**DECLARATION OF CHERYL CAMILLO**

      CHERYL CAMILLO hereby declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

      1.    The facts contained in this declaration are derived from my own knowledge, the records of the Maryland Department of Health and Mental Hygiene ("DHMH") kept in the ordinary course of its operations, and information provided to me by DHMH personnel.

      2.    I am the Executive Director of the Office of Eligibility Services, Health Care Financing, DHMH. DHMH is the single state agency designated to administer the state Medicaid plan, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, and also administers Maryland's State Children's Health Insurance Program, Title XXI of the Social Security Act, 42 U.S.C. §§ 1397aa-jj ("SCHIP"), which is a portion of the Maryland Children's Health Program ("MCHP"). In this capacity I am responsible for developing eligibility policy, regulations, and informal guidance, and for updating applicable regulations and guidance to conform to changes in federal law, court judgments and the like. I am also responsible for overseeing training of case

managers employed by local departments of social services, who perform eligibility determinations. I participate in all communications with CMS that pertain to Medicaid eligibility, and make recommendations for Maryland's submissions to CMS to the extent they involve eligibility.

3. Prior to becoming Executive Director of the Office of Eligibility Services in September, 2007, I worked for the federal Centers for Medicare and Medicaid Services ("CMS") and its predecessor, the Health Care Financing Administration ("HCFA"), hereinafter included in the term "CMS" in the area of Medicaid eligibility policy for seven and a half years, for the last three years of which as Technical Director. Before working for CMS, I worked for two years as Special Assistant to the Assistant Secretary for Planning and Evaluation, also within the U.S. Department of Health and Human Services.

## COMMUNICATIONS BETWEEN MARYLAND AND CMS REGARDING IMPLEMENTATION OF AUGUST 17 LETTER AS A CONDTION FOR 2008 RENEWAL OF MARYLAND'S § 1115 WAIVER

4. On or about May 1, 2008, I participated in a conference call concerning the renewal of Maryland's § 1115 waiver, known as HealthChoice, through which SCHIP enrollees receive services. As discussed in the Tucker Declaration filed April 16, 2008, Maryland's SCHIP program is operated entirely as a Medicaid expansion pursuant to both State Plan provisions and provisions of the HealthChoice managed care waiver. During this call CMS personnel made reference to the agency's requirement that the terms of the waiver effective upon renewal incorporate the crowd-out strategies set forth in the August 17 letter. (This and succeeding conference calls and STC amendments also involved cost neutrality, a second issue not related to

this matter.)

5. On or about May 5, 2008 at noon EDT, I participated in another CMS call regarding the waiver renewal. By this time CMS had forwarded a draft document, "Special Terms and Conditions" ("STC") governing the renewed waiver, which included crowd-out provisions and other references to the content of the August 17 letter in paragraphs 2, 3 and 4. *See* Ex. 1, CMS Final STC of May 29 (relevant excerpts) at 2-3. Maryland Medicaid officials on this call asked numerous questions about the incorporation of these requirements in the waiver document. In particular, I asked what would happen if this Court rules to eliminate some or all of these STC provisions, and CMS replied that they would continue to apply judicially disapproved provisions to Maryland's SCHIP population according to the terms of the renewed waiver. Maryland proposed revising the terms, and the two agencies proceeded to exchange redlined versions of the STC document. *See* Ex. 1, May 29 STC at 2, paragraphs 2-3 (stating that waiver and expenditure authority documents (of which STC document is a part) continue to apply despite changes in "law, regulation, final court order and policy statement[.]")

6. On or about May 9, 2008, I participated in a call convened by CMS for the purpose of discussing the most recent redline from the State.

7. On May 15, 2008, CMS transmitted a redlined STC draft to Maryland. The language added by CMS to this draft included inserting "court order" into the phrase "law, regulation, and policy statement" in paragraphs 2-4. In addition, CMS in this draft added a paragraph number, 17, to the section on crowd-out strategies, and added a sentence at the end of the paragraph before section a) stating: "The requirements of this paragraph will be subject to modification to ensure consistency with practices of similarly situated States, based on any court

orders related to crowd-out strategies and related policies." Also on May 15, 2008, Maryland formally requested that CMS extend the current HealthChoice § 1115 waiver period from May 31, 2008 to June 30, 2008, to permit the agencies to resolve the two outstanding issues without interrupting delivery of HealthChoice services to Medicaid recipients (including SCHIP enrollees).

        8.        On or about May 27, 2008, I participated in another telephone discussion with CMS regarding alternative formulations of STC language pertaining to the August 17 letter.

        9.        On May 29, 2008, Maryland received the latest STC draft from CMS, relevant excerpt (pages 1-5) attached as Ex. 1. This draft, characterized in the covering email as "our [CMS'] final language" with respect to the crowd-out provisions of the August 17 letter, changed the term "court order" in paragraphs 2-4 to "final court order," and implicitly granted Maryland's request for extension of the current HealthChoice § 1115 waiver period by changing the renewal approval period in the STC "footer" to begin July 1, 2008 instead of June 1, 2008. Ex. 1, STC at 2-3. In addition, in paragraph 17, CMS changed the phrase "to the extent required to implement the crowd-out strategies" to "to the extent required to achieve the same or similar effect of the crowd-out strategies[.]" Ex. 1, STC at 5. The last change in this draft relating to the crowd-out requirements was that CMS changed the final sentence paragraph 17 above paragraph a) from:

> The requirements of this paragraph will be subject to modification to ensure consistency with practices of similarly situated States, based on any court orders related to crowd-out strategies and related policies.

to:

> The requirements of this paragraph may be changed to ensure consistency with any changes engendered by final court order or Federal law related to crowd-out strategies and related policies.

*Id.* Maryland found this alteration particularly ominous, as it appeared to retreat from a position where CMS bound itself to change the waiver terms to comport with similar states' practices based

4

on a court order to a position where CMS retains the power to enforce pre-existing waiver terms even if those terms are invalidated by federal law or a court order.

10.  On or about May 30, 2008, I participated in a call convened by CMS to discuss the May 29 STC draft, which they regarded as final with respect to the SCHIP issues. The two open issues respecting the renewal of the HealthChoice § 1115 waiver have not yet been resolved as of June 6, 2008.

Dated: Baltimore, MD
       June 6, 2008

_____
CHERYL CAMILLO