CENTERS FOR MEDICARE & MEDICAID SERVICES
SPECIAL TERMS AND CONDITIONS

NUMBER: 11-W-00099/3

TITLE: HealthChoice Medicaid Section 1115 Demonstration

AWARDEE: Maryland Department of Health and Mental Hygiene

I. PREFACE

The following are the Special Terms and Conditions (STCs) for Maryland's HealthChoice section 1115(a) Medicaid Demonstration extension (hereinafter "Demonstration"). The parties to this agreement are the Maryland Department of Health and Mental Hygiene (State) and the Centers for Medicare & Medicaid Services (CMS). The STCs set forth in detail the nature, character, and extent of Federal involvement in the Demonstration and the State's obligations to CMS during the life of the Demonstration. The STCs are effective July 1, 2008 unless otherwise specified. All previously approved STCs, waivers, and expenditure authorities are superseded by the STCs set forth below. This Demonstration extension is approved through June 30, 2011.

The STCs have been arranged into the following subject areas: Program Description and Objectives; General Program Requirements; Eligibility and Benefits; Cost Sharing; Delivery Systems; Family Planning Program; General Reporting Requirements; General Financial Requirements; Monitoring Budget Neutrality; Evaluation of the Demonstration; and Schedule of State Deliverables for the Demonstration Extension Period. Additionally, three attachments have been included to provide supplemental information and guidance for specific STCs.

II. PROGRAM DESCRIPTION AND OBJECTIVES

The HealthChoice section 1115(a) Demonstration is designed to use a managed care delivery system to create efficiencies in the Medicaid program and enable the extension of coverage and/or targeted benefits to certain individuals who would otherwise be without health insurance or without access to benefits tailored to the beneficiary's specific medical needs. The initial HealthChoice Demonstration was approved in 1996 to enroll most Medicaid recipients into managed care organizations (MCOs) beginning July 1, 1997.

The State's goal in implementing and continuing the Demonstration is to improve the health status of low-income Marylanders by:

- Improving access to health care for the Medicaid population;
- Improving the quality of health services delivered;
- Expanding coverage to additional low-income Marylanders with resources generated through managed care efficiencies;
- Providing patient-focused, comprehensive, and coordinated care designed to meet health care needs by providing each member a single "medical home" through a primary care provider (PCP); and

Demonstration Approval Period: July 1, 2008 through June 30, 2011

1

- Emphasizing health promotion and disease prevention by providing access to immunizations and other wellness services, such as regular prenatal care.

Under the statewide health care reform program, the State enrolls demonstration eligibles into a managed care organization (MCO) for comprehensive primary and acute care, and/or one of the demonstration authorized health care programs. The targeted programs authorized solely by the demonstration include the Rare and Expensive Case Management (REM) program, the Primary Adult Care (PAC) Program, the Employed Individuals with Disabilities (EID) program and the post-partum Family Planning program. Mental health services are provided under the Demonstration in a separate fee-for-service delivery system. As of March 1, 2008, a total of 555,095 beneficiaries and demonstration eligible individuals are enrolled in the HealthChoice program. This total includes 489,547 beneficiaries that are categorically eligible, as well as 30,128 PAC program participants and 35,420 Family Planning program participants in expansion populations authorized by this Demonstration.

The HealthChoice program will evolve during this extension period by providing an eligibility expansion and a benefit expansion which were approved by the General Assembly in State fiscal year (SFY) 2008. The eligibility expansion will provide coverage through the Medicaid State Plan to categorically eligible parent and caretaker adults above 30 percent of the Federal poverty level (FPL) to 116 percent of the FPL effective July 1, 2008. As currently scheduled, the benefit expansion would provide additional benefits, on an incremental basis, under the limited benefit package available to PAC program participants. The ultimate goal of the PAC program benefit expansion initiative is to eventually provide participants similar benefits as compared to those available to Medicaid State Plan eligible individuals.

In addition to these expansions, the State will begin operating its EID program under the Medicaid State plan, rather than the demonstration, as of October 1, 2008 and will reduce the Family Planning FPL limit from 250 percent of FPL to 200 percent FPL at the time of eligibility redetermination in order to comply with current CMS policy directives beginning July 1, 2008.

## III. GENERAL PROGRAM REQUIREMENTS

1. **Compliance with Federal Non-Discrimination Statutes.** The State agrees that it must comply with all applicable Federal statutes relating to non-discrimination. These include, but are not limited to, the Americans with Disabilities Act of 1990, title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975.

2. **Compliance with Medicaid and State Children's Health Insurance Program (SCHIP) Law, Regulation, and Policy.** All requirements of the Medicaid and SCHIP programs expressed in law, regulation, final court order and policy statement not expressly waived or identified as not applicable in the waiver and expenditure authority documents of which these terms and conditions are part, must apply to the Demonstration.

3. **Changes in Medicaid and SCHIP Law, Regulation, and Policy.** The State must, within the timeframes specified in law, regulation, final court order or policy directive, come into compliance with any changes in Federal law, regulation, final court order or policy affecting the Medicaid or SCHIP programs that occur during this Demonstration approval period, unless the provision being changed is explicitly waived under the STCs herein governing the Demonstration.

Demonstration Approval Period: July 1, 2008 through June 30, 2011

2

4. **Impact on Demonstration of Changes in Federal Law, Regulation, and Policy Statements.**

    a) To the extent that a change in Federal law, regulation, final court order or policy requires either a reduction or an increase in Federal financial participation (FFP) for expenditures made under this Demonstration, the State must adopt, subject to CMS approval, modified budget neutrality and allotment neutrality agreements for the Demonstration as necessary to comply with such change. The modified agreements will be effective upon the implementation of the change.

    b) If mandated changes in the Federal law require State legislation, the changes must take effect on the day, such State legislation becomes effective, or on the last day such legislation was required to be in effect under the law.

5. **State Plan Amendments.** The State will not be required to submit title XIX or title XXI State plan amendments for changes affecting any populations made eligible solely through the Demonstration. If a population eligible through the Medicaid or SCHIP State Plan is affected by a change to the Demonstration, a conforming amendment to the appropriate State Plan is required, except as otherwise noted in these STCs.

6. **Changes Subject to the Amendment Process.** Demonstration provisions related to eligibility, enrollment, benefits, delivery systems, cost sharing, family planning services covered under this Demonstration, evaluation design, sources of non-Federal share of funding, budget neutrality, and other comparable program elements in these STCs must be submitted to CMS as amendments to the Demonstration. All amendment requests are subject to approval at the discretion of the Secretary in accordance with section 1115 of the Social Security Act (the Act). The State must not implement changes to these elements without prior approval by CMS. Amendments to the Demonstration are not retroactive and FFP will not be available for changes to the Demonstration that have not been approved through the amendment process set forth in paragraph seven below. The State will notify CMS of proposed Demonstration changes at the monthly monitoring call as well as in the written quarterly report to determine if a formal amendment is necessary.

7. **Amendment Process.** Requests to amend the Demonstration must be submitted to CMS for approval no later than 120 days prior to the planned date of implementation of the change and may not be implemented until approved. Amendment requests must be reviewed by the Federal Review Team and must include, but are not limited to, the following:

    a) An explanation of the public process used by the State consistent with the requirements of paragraph 15 to reach a decision regarding the requested amendment;

    b) A data analysis which identifies the specific "with waiver" impact of the proposed amendment on the current budget neutrality expenditure cap. Such analysis must include current "with waiver" and "without waiver" status on both a summary and detailed level through the current extension approval period using the most recent actual expenditures, as well as summary and detailed projections of the change in the "with waiver" expenditure total as a result of the proposed amendment which isolates (by Eligibility Group) the impact of the amendment;

    c) An up-to-date SCHIP Allotment Neutrality worksheet;

    d) A detailed description of the amendment, including impact on beneficiaries, with sufficient supporting documentation including a conforming title XIX and/or title XXI State Plan amendment; and

Demonstration Approval Period: July 1, 2008 through June 30, 2011      3

e) If applicable, a description of how the evaluation design must be modified to incorporate the amendment provisions.

8. **Extension of the Demonstration**. States that intend to request demonstration extensions under sections 1115(e) or 1115(f) are advised to observe the timelines contained in those statutes. In addition, the State must submit to CMS a complete application at least **one year prior** to the expiration of the current section 1115(a) extension period. CMS will determine which authority is the most appropriate vehicle for granting an extension, if any. CMS will provide notice to the State of any outstanding items within 60 days of submission. Upon submission, the State will work with CMS to identify specific updates necessary to the submission based on significant programmatic changes such as changes in State law, population demographics, or expenditures.

9. **Demonstration Phase-Out.** The State may suspend or terminate this Demonstration in whole or in part at any time prior to the date of expiration. The State must promptly notify CMS in writing of the reason(s) for the suspension or termination, together with the effective date. In the event the State elects to phase out the Demonstration, the State must submit a phase-out plan to CMS at least six months prior to initiating phase-out activities. Nothing herein should be construed as preventing the State from submitting a phase-out plan with an implementation deadline shorter than six months when such action is necessitated by emergent circumstances. The phase-out plan is subject to CMS approval. If the project is terminated or any relevant waivers suspended by the State, FFP must be limited to normal closeout costs associated with terminating the Demonstration, including services and administrative costs of disenrolling participants.

10. **Enrollment Limitation During Demonstration Phase-Out**. If the State elects to suspend, terminate, or not renew this Demonstration as described in paragraph nine, during the last six months of the Demonstration, individuals who would not be eligible for Medicaid under the current Medicaid State plan must not be enrolled unless the Demonstration is extended by CMS. Enrollment may be suspended if CMS notifies the State in writing that the Demonstration will not be renewed.

11. **CMS Right to Terminate or Suspend.** CMS may suspend or terminate the Demonstration, in whole or in part, at any time before the date of expiration, whenever it determines following a hearing that the State has materially failed to comply with the terms of the project. CMS must promptly notify the State in writing of the determination and the reasons for the suspension or termination, together with the effective date.

12. **Finding of Non-Compliance.** The State does not relinquish its rights to challenge CMS's finding that the State materially failed to comply.

13. **Withdrawal of Waiver Authority.** CMS reserves the right to withdraw waiver or expenditure authorities at any time it determines that continuing the waiver or expenditure authorities would no longer be in the public interest or promote the objectives of title XIX or XXI. CMS must promptly notify the State in writing of the determination and the reasons for the withdrawal, together with the effective date, and must afford the State an opportunity to request a hearing to challenge CMS' determination prior to the effective date. If a waiver or expenditure authority is withdrawn, FFP is limited to normal closeout costs associated with terminating the Demonstration, including services and administrative costs of disenrolling participants.

Demonstration Approval Period: July 1, 2008 through June 30, 2011

14. **Adequacy of Infrastructure.** The State will ensure the availability of adequate resources for implementation and monitoring of the Demonstration, including education, outreach, and enrollment; maintaining eligibility systems; compliance with cost sharing requirements; and reporting on financial and other Demonstration components.

15. **Public Notice and Consultation with Interested Parties.** The State must continue to comply with the State Notice Procedures set forth in 59 Fed. Reg. 49249 (September 27, 1994) when any program changes to the Demonstration, including, but not limited to, those referenced in paragraph six are proposed by the State.

16. **FFP.** No Federal matching funds for expenditures for this Demonstration will take effect until the effective date identified in the Demonstration approval letter.

17. **Crowd-out strategies for higher income populations and maintaining focus on core populations.** The State must submit an SCHIP and a Medicaid State plan amendment, to the extent required to achieve the same or similar effect of the crowd-out strategies described below by August 16, 2008 to ensure that public coverage under the SCHIP and Medicaid programs (and this Demonstration) does not substitute for private coverage. In addition, the State must submit a Demonstration amendment request in accordance with paragraph 8, if implementation of these strategies affects the administration or operation of the Demonstration. These strategies should apply to eligibility and coverage for new optional targeted low income enrollees with family incomes above 250 percent of the FPL on or after August 16, 2008. Those crowd-out strategies should be of similar effectiveness as the strategies described in paragraph (a). In addition, the State should provide data described in paragraph (b). The requirements of this paragraph may be changed to ensure consistency with any changes engendered by final court order or Federal law related to crowd-out strategies and related policies.

    a) Effective crowd-out strategies are:

        i. Cost sharing requirements under the State plan that, compared to private plans, is not more favorable to the public plan by more than one percentage point of the family income, unless the public plan's cost sharing is set at a five percent family cap;
        ii. A minimum one year period of uninsurance for individuals who voluntarily terminate private insurance coverage prior to receiving coverage;
        iii. Procedures to monitor and verify information regarding coverage provided by a noncustodial parent;

    b) To ensure that the State fully serves the core population groups and effectively monitors the success of crowd-out measures, the State should provide data indicating:

        i. Whether at least 95 percent of the children in the State below 200 percent of the FPL have health insurance coverage, including coverage through SCHIP or Medicaid;
        ii. Whether the number of children in the target population insured through private employers has not decreased by more than two percentage points over the prior five year period; and
        iii. Whether the State is current with all reporting requirements in SCHIP and reports on a monthly basis data relating to the crowd-out requirements.